## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Case No. 16-10369 (KJC) |
| Sundevil Power Holdings, LLC, *et al.* | ) |
| | ) Chapter 11 |
| Debtors.[1] | ) |
| | ) (Joint Administration Requested) |
| | ) **Re: Docket Nos. 16 and 21** 43 |

### INTERIM ORDER PURSUANT TO
### SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND
### RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
### (A) AUTHORIZING THE DEBTORS TO (I) USE CASH COLLATERAL OF THE
### PREPETITION SECURED PARTIES, (II) OBTAIN SECURED SUPERPRIORITY
### POSTPETITION FINANCING AND (III) PROVIDE ADEQUATE PROTECTION TO
### THE PREPETITION SECURED PARTIES, AND (B) SCHEDULING FINAL HEARING

Upon the motion, dated February 11, 2016 (the "Motion"), of Sundevil Power

Holdings, LLC and SPH Holdco LLC, as debtors-in-possession (the "Debtors") in the above-

captioned chapter 11 cases (the "Cases"), for the entry of an order (A) authorizing the Debtors to

(I) use cash collateral of the Prepetition Secured Parties (defined below) pursuant to Section 363

of title 11 of the United States Code (as amended, the "Bankruptcy Code"), (II) obtain secured

superpriority postpetition financing pursuant to Sections 361, 362 and 364 of the Bankruptcy

Code and (III) provide adequate protection to the Prepetition Secured Parties pursuant to

Sections 361, 362 and 363 of the Bankruptcy Code, and (B) scheduling interim and final

hearings pursuant to Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (as

amended, the "Bankruptcy Rules"), the Debtors sought, among other things, the following relief:

(i)     the Court's authorization, pursuant to Sections 363 and 364(c)(1), (2), (3)

and (d)(1) of the Bankruptcy Code, for Sundevil Power Holdings, LLC (the "DIP Borrower"), to

---

1   The Debtors in these chapter 11 cases, and their respective federal tax identification numbers, are Sundevil
    Power Holdings, LLC (2308) and SPH Holdco LLC (7777).  The Debtors' service address is:  701 East Lake
    Street, Suite 300, Wayzata, Minnesota 55391.

(A) enter into a senior secured superpriority debtor-in-possession credit facility (the "DIP Facility") provided by CLMG Corp., as administrative agent and as collateral agent (in such capacities, collectively, the "DIP Agent"), and by the Prepetition Lender (defined below) and the other lenders from time to time party thereto, as lenders (in such capacity, collectively, the "DIP Lenders"), pursuant to the Senior Secured Superpriority Debtor-in-Possession Credit Agreement attached hereto as Exhibit 1 (the "DIP Credit Agreement"[2] and, together with this order (the "Interim Order"), the Final Order (defined below), and all other agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, including the Depositary Agreement (defined below), the DACA (defined below) and the DIP Budget (defined below), collectively, the "DIP Loan Documents"), and (B) obtain extensions of credit thereunder on a senior secured and superpriority basis, (1) during the period (the "Interim Period") from the date hereof through and including the earlier to occur of (x) the date of entry of the Final Order by this Court and (y) the Termination Date (defined below), in an aggregate principal amount not to exceed $7,500,000, and (2) upon entry of the Final Order and thereafter until the Termination Date, in an aggregate principal amount not to exceed $45,000,000, in each case at any time outstanding (all financial accommodations and extensions of credit under the DIP Credit Agreement and the DIP Facility, the "DIP Extensions of Credit");

(ii)    the Court's authorization for the DIP Borrower to execute the DIP Credit Agreement and the other DIP Loan Documents to which it is a party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

---

2      Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the DIP Credit Agreement.

Americas 90980689 (2K)
84614015.3

(iii)    the Court's authorization to use DIP Extensions of Credit in accordance with the proposed budget prepared by the Debtors and annexed hereto as Exhibit 2 (as updated from time to time pursuant to and in accordance with the terms of the DIP Loan Documents and, in each case, subject to the prior approval of the DIP Agent, the "DIP Budget"), including any variances permitted under the DIP Credit Agreement, and as otherwise provided herein and in the other DIP Loan Documents;

(iv)    the Court's authorization to grant to the DIP Agent, for the benefit of the DIP Lenders under the DIP Loan Documents (collectively with the DIP Agent and, solely in its capacity as depositary under the Depositary Agreement and the DACA on and after the Petition Date, the Depositary (defined below), the "DIP Secured Parties"), in respect of the DIP Obligations (defined below), a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code and first priority priming liens on and security interests in all assets and property of the Debtors (now owned or hereafter acquired), including the equity interests in the DIP Borrower, pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, in each case as and to the extent set forth more fully below and subject and subordinate to the Carve-Out (defined below);

(v)    the Court's authorization to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "Cash Collateral") in which the Prepetition Secured Parties (defined below) have an interest;

(vi)    the Court's authorization to grant, as of the Petition Date (defined below), the Adequate Protection Superpriority Claim (defined below) and Adequate Protection Liens (defined below), to the extent of and as compensation for any Diminution in Value (defined below), and the payment of interest, fees and expenses to the Prepetition Agent (defined below)

Americas 90980689 (2K)
84614015.3

for the benefit of the Prepetition Secured Parties, in each case as set forth more fully below and subject and subordinate to the Carve-Out;

(vii)    the modification or waiver by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code and any other applicable stay (including Rule 6004 of the Federal Rules of Bankruptcy Procedure) to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, this Interim Order and the other DIP Loan Documents and to provide for the immediate effectiveness of this Interim Order;

(viii)   the scheduling by the Court of an interim hearing (the "Interim Hearing") to consider entry of this Interim Order;

(ix)    the scheduling by the Court of a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(x)    approval of a Final Order, pursuant to and in connection with which the Debtors will be required to satisfy certain Milestones in respect of an Acceptable Sale Process, in accordance with the DIP Credit Agreement, through the implementation of the Bidding Procedures (to be approved in connection with the Final Order) in respect of substantially all of the Debtors' assets through a public auction or a private sale process whereby the Prepetition Agent and the DIP Agent shall have the right to credit bid up to the full amount of their claims.

The Court having considered the Motion, the terms of the DIP Facility and the DIP Loan Documents, the *Declaration of Raphael T. Wallander in Support of Chapter 11 Petitions and First Day Pleadings*, the *Declaration of Richard Morgner in Support of the Motion*, and the evidence submitted at the Interim Hearing held before this Court on

4

February ___, 2016, to consider entry of this Interim Order; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules"), due and proper notice of the Motion and the Interim Hearing having been given; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date.**    On February 11, 2016 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").    The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in the Cases.

B.    **Jurisdiction and Venue.**    The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.    Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).    Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation.**    As of the date hereof, no official committee of unsecured creditors has been appointed in the Cases (the "Creditors' Committee" and, together

with any other statutory committee appointed in the Cases pursuant to sections 328 or 1103 of the Bankruptcy Code, a "Committee").

D.    **Notice.**  The Debtors have represented that notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to (a) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (b) counsel to the Prepetition Agent; (c) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (d) the Office of the United States Attorney General for the District of Delaware; (e) the Internal Revenue Service, (f) the Office of the United States Attorney General for the District of Delaware and (g) those creditors holding the 20 largest unsecured claims against the Debtors' estates (the "Notice Parties").  Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the Local Rules.

E.    **Prepetition Indebtedness.**  Without limiting the rights of any party in interest as and to the extent set forth in paragraph 8 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree as follows:

(i)    Prepetition Credit Facility.  The DIP Borrower, as borrower, Beal Bank USA, as lender (the "Prepetition Lender") and CLMG Corp., as successor administrative agent (in such capacity and as successor collateral agent, the "Prepetition Agent" and, together with the Prepetition Lender and the Depositary (solely in its capacity as depositary under the Depositary Agreement and the DACA prior to the Petition Date), the "Prepetition Secured Parties") are parties to that certain Credit Agreement, dated as of July 23, 2012 (as amended by the Omnibus

Amendment Agreement, dated as of July 10, 2014, the Second Amendment to Credit Agreement, dated as of December 4, 2015 and the Third Amendment to Credit Agreement, dated as of February 1, 2016, the "Prepetition Credit Agreement" and, together with each of the Loan Documents (each as defined therein), the "Prepetition Loan Documents").   The Prepetition Credit Agreement provided for a $160,000,000 term loan credit facility, a $25,000,000 revolving credit facility, which includes a letter of credit facility, a $40,000,000 incremental term loan facility, an additional incremental term loan facility consisting of two tranches in the aggregate amounts of $7,700,000 and $2,700,000 respectively and another $1,500,000 incremental facility (collectively, the "Prepetition Credit Facility").   Pursuant to the Prepetition Loan Documents, the Prepetition Secured Parties were granted first priority liens on, and security interests in substantially all of the Debtors' assets and property, including the equity interests in the DIP Borrower, subject to certain Permitted Liens (as defined in the Prepetition Credit Agreement).

(ii)    Replacement of Prepetition Agent.  On February 9, 2016, the Depositary, the DIP Borrower, Bank of America, N.A. and CLMG Corp. entered into a Resignation, Appointment and Amendment Agreement (the "Resignation and Appointment Agreement") whereby CLMG Corp. replaced Bank of America, N.A. as Prepetition Agent.

(iii)    Depositary.  In connection with the Prepetition Credit Facility, Bank of America, N.A. (the "Depositary"), the DIP Borrower and the Prepetition Agent entered into a Depositary Agreement, dated as of July 23, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Depositary Agreement"), governing the DIP Borrower's rights to make withdrawals and transfers from its Accounts and granting to the Prepetition Agent control (within the meaning of the Uniform Commercial Code) over the Accounts.  In connection with the Resignation and Appointment Agreement, the DIP Borrower,

7

the Prepetition Agent and the Depositary entered into a Deposit Account Control Agreement, dated as of February 9, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "DACA"), with respect to the DIP Borrower's Operating Account (as defined in the Depositary Agreement) conferring control (within the meaning of the Uniform Commercial Code) to the Prepetition Agent over such Operating Account. The control rights granted to the Prepetition Agent under the DACA were, prior to the effectiveness of the DACA, provided under the Depositary Agreement.

      F.    **Stipulations as to Prepetition Secured Obligations.** Without limiting the rights of any party in interest as and to the extent set forth in paragraph 8 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree:

      (i)    **Prepetition Secured Obligations**. As of the Petition Date, the DIP Borrower was indebted and liable to the Prepetition Agent and the Prepetition Secured Parties under the Prepetition Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $230,700,000 with respect to the Prepetition Credit Facility and not less than $500,000 of undrawn Letters of Credit (as defined in the Prepetition Credit Agreement) plus accrued (both before and after the Petition Date) and unpaid interest thereon, and fees, expenses and all other obligations under the Prepetition Loan Documents, including any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents (collectively, the "Prepetition Secured Obligations").

      (ii)    **Enforceability, etc. of the Prepetition Secured Obligations**. The Prepetition Loan Documents and the Prepetition Secured Obligations are (a) legal, valid, binding, and enforceable against the DIP Borrower, and (b) not subject to any contest, attack,

Americas 90980689 (2K)
84614015.3

objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

    (iii) **Enforceability, etc. of Prepetition Liens**. The liens and security interests (collectively, the "Prepetition Liens") granted by the Debtors under the Prepetition Loan Documents to or for the benefit of the Prepetition Agent and the Prepetition Secured Parties as security for the Prepetition Secured Obligations encumber substantially all of the DIP Borrower's assets and property and the equity interests in the DIP Borrower (all such assets and property, as the same existed on or at any time prior to the Petition Date, including all cash and non-cash proceeds thereof, collectively, the "Prepetition Collateral"). The Prepetition Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. As of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware, after making due inquiry, of any liens or security interests having priority over the Prepetition Liens, except the Senior Third Party Liens (defined below). The Prepetition Liens were granted to or for the benefit of the Prepetition Agent and the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

    (iv) **Indemnity**. The Prepetition Agent, the Prepetition Secured Parties and the DIP Secured Parties have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or

9

related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (defined below) and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.  Accordingly, the Prepetition Agent, the Prepetition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto except for claims relating to gross negligence and willful misconduct.  No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph F, in the Prepetition Loan Documents or in the DIP Loan Documents, to indemnify and/or hold harmless the Prepetition Agent, the DIP Agent, or any other Prepetition Secured Party or DIP Secured Party, as the case may be, and any such defenses are hereby waived.

(v)    **No Control**.  None of the DIP Secured Parties or the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility, the DIP Loan Documents and/or the Prepetition Loan Documents.

(vi)    **No Claims, Causes of Action**.  As of the date hereof, there exist no claims or causes of action against any of the Prepetition Agent, the Prepetition Secured Parties, or the DIP Secured Parties with respect to, in connection with, related to, or arising from the Prepetition Loan Documents and/or the DIP Loan Documents that may be asserted by the Debtors or any other person or entity.

(vii)    **Release**.  The Debtors forever and irrevocably release, discharge, and acquit all former, current and future (a) DIP Secured Parties, (b) Prepetition Secured Parties,

10

(c) Affiliates of the DIP Secured Parties and Prepetition Secured Parties, and (d) officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, and predecessors and successors in interest of each of the DIP Secured Parties, the Prepetition Secured Parties and each of their respective Affiliates, in each case acting in such capacity (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agent, the Prepetition Secured Parties and/or the DIP Secured Parties. The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order by the Court.

11

G.      **Immediate Need for Postpetition Financing and Use of Cash Collateral.** The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).    Good cause has been shown for entry of this Interim Order.    An immediate need exists for the Debtors to obtain funds and liquidity in order to continue operations, to satisfy in full the costs and expenses of administering the Cases and to preserve the value of their estates pending a sale of all or substantially all of the Debtors' assets and property pursuant to the Acceptable Sale Process.    The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize the return for all creditors requires the availability of the DIP Facility and the use of Cash Collateral.    In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.    Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

H.      **No Credit Available on More Favorable Terms.**  The Debtors have been unable to obtain on more favorable terms and conditions than those provided in this Interim Order (a) adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.  The Debtors are unable to obtain credit for borrowed

12

money without granting the DIP Liens and the DIP Superpriority Claim (defined below) to (or for the benefit of) the DIP Secured Parties.

I. **Use of Cash Collateral and Proceeds of the DIP Facility, DIP Collateral and Prepetition Collateral.** The Debtors represent and stipulate that all of the Debtors' cash, cash equivalents, negotiable instruments, investment property, and securities constitute Cash Collateral of the Prepetition Agent on behalf of the Prepetition Lender. All Cash Collateral, all proceeds of the Prepetition Collateral and the DIP Collateral (defined below), including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses payable under this Interim Order or the Final Order) shall be used and/or applied in accordance with the terms and conditions of this Interim Order, the DIP Budget (subject to variances permitted under the DIP Credit Agreement) and the other DIP Loan Documents, for the types of expenditures in the DIP Budget and for no other purpose; provided that, subject to the limitations set forth in the DIP Budget, up to $25,000 in the aggregate of the proceeds of the DIP Facility, DIP Collateral, Prepetition Collateral or Cash Collateral may be used by any Committee solely to investigate the matters covered by the Claims Stipulations (defined below).

J. **Adequate Protection for the Prepetition Secured Parties.** The Prepetition Agent and the Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof. The Prepetition Agent and the Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof and the DIP Budget (subject to variances permitted under the DIP Credit

13

Agreement) during the Interim Period subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under Section 363(m) of the Bankruptcy Code. The Prepetition Agent and the Prepetition Secured Parties are entitled to the adequate protection as and to the extent set forth herein pursuant to Sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agent's consent thereto; provided that nothing in this Interim Order or the other DIP Loan Documents shall (x) be construed as a consent by any Prepetition Secured Party that it would be adequately protected in the event debtor-in-possession financing is provided by a third party (i.e., other than the DIP Lenders) or a consent to the terms of any other such financing, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof), or (y) prejudice, limit or otherwise impair the rights of the Prepetition Agent (for the benefit of the Prepetition Secured Parties) to seek new, different or additional adequate protection under any circumstances.

K.    **Section 552.**  Subject to the entry of a Final Order, in light of, as applicable, the subordination of the Prepetition Liens and the Adequate Protection Liens of the Prepetition Secured Parties to the DIP Liens and the Carve-Out, and the granting of the DIP Liens on the Prepetition Collateral, the Prepetition Agent and the Prepetition Secured Parties are each entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

14

L.  **Extension of Financing.**  The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents (including the DIP Budget) and subject to (i) the entry of this Interim Order and the Final Order, (ii) approval in the Final Order of the Milestones, including, without limitation, procedures relating to the Acceptable Sale Process (collectively, the "Restructuring Conditions"), and (iii) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens), including the Restructuring Conditions, will not be affected by any subsequent reversal, modification, vacatur or amendment of, as the case may be, this Interim Order, the Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

M.  **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)  The terms and conditions of the DIP Facility, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration;

(ii)  the DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the other DIP Secured Parties; and

(iii)  the use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

15

N.     **Relief Essential; Best Interest.**  The relief requested in the Motion (and provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility, incur the DIP Obligations and use the Cash Collateral as contemplated herein.

**NOW, THEREFORE**, on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors, the Prepetition Secured Parties and the DIP Secured Parties, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted**.  The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order, to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.     **DIP Facility**.

(a)     **DIP Obligations, etc**.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur and to perform the DIP Obligations in accordance with and subject to this Interim Order (and, upon its entry, a Final Order) and the other DIP Loan Documents, to execute and/or deliver all DIP Loan Documents and all other instruments, certificates, agreements and documents, and to take all actions which may be reasonably required or otherwise necessary for the performance by the Debtors under the DIP Facility, including the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to pay all principal, interest, fees and

16

expenses, indemnities and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, the reasonable fees and expenses of the attorneys and financial and other advisors and consultants of the DIP Agent and the DIP Lenders as, and to the extent, provided for herein and in the other DIP Loan Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities and obligations (including indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Loan Documents, the "DIP Obligations"); provided that payment of any invoices of the DIP Agent's and the DIP Lenders' professionals shall be subject to the notice and objection provisions of paragraph 22(b) of this Interim Order; provided further that any rights of and obligations owing to the Depositary under the Depositary Agreement and the DACA prior to the Petition Date shall constitute Prepetition Secured Obligations (and not, for the avoidance of doubt, DIP Obligations) as and to the extent provided in the Prepetition Loan Documents. The DIP Loan Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms. No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. The term of the DIP Facility shall commence on the date of entry of this Interim Order and end on the Termination Date, subject to the terms and conditions set forth herein and in the other DIP Loan Documents, including the protections afforded a party acting in good faith under Section 364(e) of the Bankruptcy Code.

17

(b)    **Authorization to Borrow, etc**.  In order to continue to operate its business, subject to the terms and conditions of this Interim Order and the other DIP Loan Documents (including the DIP Budget), the DIP Borrower is hereby authorized to borrow under the DIP Facility during the Interim Period up to an aggregate principal amount of $7,500,000.

(c)    **Conditions Precedent**.  The DIP Lenders shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder or under the other DIP Loan Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making DIP Extensions of Credit under the DIP Loan Documents have been satisfied or waived in accordance with the terms of the DIP Loan Documents.

(d)    **DIP Collateral**.  As used herein, "DIP Collateral" shall mean all now owned or hereafter acquired assets and property, whether real or personal, of the Debtors including, without limitation, all Prepetition Collateral, all assets and property pledged under the DIP Loan Documents, all equity interests in the DIP Borrower and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts (including the cash collection, "lockbox" and "concentration" accounts provided for in the DIP Loan Documents), "core concentration accounts," "cash collateral accounts", and in each case all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks,

18

tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing. The DIP Collateral shall not include causes of action for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions"), but shall, upon entry of a Final Order, include the proceeds of Avoidance Actions, which shall be available, to the extent necessary, to pay any administrative claim held by the Prepetition Agent or any other Prepetition Secured Party in respect of the Prepetition Secured Obligations and by the DIP Agent or any DIP Lender in respect of the DIP Facility.

(e)     **DIP Liens**.  Effective immediately upon the entry of this Interim Order, and subject and subordinate to the Carve-Out, as set forth more fully in this Interim Order, the DIP Agent for the ratable benefit of the DIP Secured Parties is hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to this Interim Order, any Final Order and the other DIP Loan Documents, the "DIP Liens"):

(I)     pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable first priority liens on and security interests in all DIP Collateral that was not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date;

(II)     pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in (x) all DIP Collateral which is unencumbered by the Prepetition Liens but on which a third party, i.e., not the Prepetition Secured Parties (a "Third Party Lienholder"),

19

had a pre-existing lien on the Petition Date and (y) all DIP Collateral encumbered by the Prepetition Liens on which a Third Party Lienholder had a pre-existing lien on the Petition Date that was senior to the Prepetition Liens, in each case immediately junior only to any such liens and security interests of Third Party Lienholders, but solely to the extent that such liens and security interests of Third Party Lienholders were in each case valid, enforceable, perfected and non-avoidable as of the Petition Date and were permitted by the terms of the Prepetition Loan Documents (the "Senior Third Party Liens"); and

(III)   pursuant to Section 364(d) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in all Prepetition Collateral, which liens and security interests shall be senior to and prime the Prepetition Liens and the liens of all Third Party Lienholders which are *pari passu* with or junior and subject to the Prepetition Liens.

(f)   **Other Provisions Relating to the DIP Liens**. The DIP Liens shall secure all of the DIP Obligations. The DIP Liens shall not, without the consent of the DIP Agent, be made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and to the Carve-Out, by any Court order heretofore or hereafter entered in the Cases, and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Cases. The DIP Liens and the Adequate Protection Liens shall not be subject to Sections 510, 549, 550 or 551 of the

Americas 90980689 (2K)
84614015.3

Bankruptcy Code or, upon entry of the Final Order, the "equities of the case" exception of Section 552 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code.

(g)     **Superpriority Administrative Claim Status**.  The DIP Obligations shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "DIP Superpriority Claim") of the DIP Agent for the benefit of the DIP Secured Parties, and be payable from and have recourse to all DIP Collateral.  The DIP Superpriority Claim shall be subject and subordinate only to the Carve-Out.  Other than as expressly provided herein, including in paragraph 9 hereof with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim or any of the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder or under the other DIP Loan Documents, or otherwise in connection with the DIP Facility.

3.     **Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility**.  Subject to the terms and conditions of this Interim Order and the other DIP Loan Documents, and to the adequate protection granted to or for the benefit of the Prepetition Secured Parties as hereinafter set forth, the Debtors are authorized during the Interim Period (and not beyond) to (a) use the Cash Collateral and (b) request and use proceeds of the DIP Extensions of Credit, in each case in the amounts and for the line item expenditures set forth in the DIP Budget (subject to variances permitted under the DIP Credit Agreement); provided that the Debtors may use Cash Collateral or DIP Extensions of Credit to pay reasonable and documented fees and costs of the Debtor Professionals (defined below), to the extent allowed by

21

the Court at any time, whether by interim order, final order, procedural order or otherwise, in excess of the amount budgeted for such fees and costs for any given month in the DIP Budget, including any carry forward amounts provided for in the DIP Credit Agreement, (but any such payment shall constitute an Event of Default). The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Loan Documents and the prior written consent of the DIP Agent without further order of the Court; provided that any such amended, supplemented, modified, restated, replaced, or extended DIP Budget shall, within three (3) business days, be filed with the Court and served on the office of the U.S. Trustee and any Committee. Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 17(b) hereof and the Carve-Out, the Debtors' right to request or use proceeds of DIP Extensions of Credit or to use Cash Collateral shall terminate on the Termination Date. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

4.    **Adequate Protection for Prepetition Secured Parties**. As adequate protection for the interests of the Prepetition Agent and the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), the Prepetition Agent, for the benefit of the Prepetition Secured Parties, shall receive adequate protection as follows:

(a)    **Adequate Protection Liens**. To the extent of, and in an aggregate amount equal to, the diminution in value (if any) of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including the Cash Collateral), from and after the Petition Date, calculated in accordance with Section 506(a) of the Bankruptcy Code, resulting from the use, sale or lease by the Debtors of the Prepetition Collateral (including the use of Cash

Americas 90980689 (2K)
84614015.3

Collateral), the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of Section 362(a) (collectively, "Diminution in Value"), the Prepetition Secured Parties shall have, pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, replacement security interests in and liens upon (the "Adequate Protection Liens") all of the DIP Collateral. The Adequate Protection Liens of the Prepetition Secured Parties shall be junior and subject to the DIP Liens and any Senior Third Party Liens. The Adequate Protection Liens shall in all cases be subject and subordinate to the Carve-Out.

(b) **Adequate Protection Superpriority Claims**. To the extent of the aggregate Diminution in Value, the Prepetition Secured Parties shall have, subject to the payment of the Carve-Out, an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") as provided for in Section 507(b) of the Bankruptcy Code, immediately junior and subject to the DIP Superpriority Claim, and payable from and having recourse to all DIP Collateral; provided that the Prepetition Secured Parties shall not receive or retain any payments, property, distribution or other amounts in respect of the Adequate Protection Superpriority Claim unless and until the DIP Obligations and (without duplication) the DIP Superpriority Claim have indefeasibly been paid in full in cash.

(c) **Adequate Protection Payments, etc**. The Prepetition Agent (on behalf of the Prepetition Secured Parties) shall receive from the Debtors (x) upon the entry of this Interim Order, immediate cash payment of all accrued and unpaid interest on the Prepetition Secured Obligations at the rates provided for in the Prepetition Loan Documents, and all other accrued and unpaid fees and disbursements (including legal and advisory fees and expenses) owing to the Prepetition Agent or the Prepetition Secured Parties under the Prepetition Loan Documents and

23

incurred prior to the Petition Date, subject to the notice and objection provisions in paragraph 22(b) below as to legal and advisory fees and expenses, and (y) when due, all principal amortization payments, accrued but unpaid interest on the Prepetition Secured Obligations, and all letter of credit, unused commitment and other fees owing by the Debtors under the Prepetition Loan Documents, at the rate provided for therein.

(d)    The Debtors shall pay all reasonable professional and advisory fees, costs and expenses of the Prepetition Agent and the Prepetition Secured Parties incurred in connection with the administration and monitoring of the Prepetition Loan Documents and/or the DIP Facility, including, without, limitation, the reasonable documented postpetition fees and expenses of legal, financial and other advisory, tax, investment banking and other professionals (including, without limitation, White & Case LLP) and any local counsel and any replacement or additional thereto; provided that payment of any fees and expenses of the Prepetition Agent's or Prepetition Secured Parties' professionals shall be subject to the notice and objection provisions of paragraph 22(b) of this Interim Order.

(e)    **Restructuring Conditions and Credit Bid Protection**.  The Prepetition Secured Parties have represented that the Restructuring Conditions are an essential element of the adequate protection of the Prepetition Secured Parties.  Subject to Final Order, the DIP Agent and the Prepetition Agent shall each have, subject to section 363(k) of the Bankruptcy Code, the unqualified right to credit bid (x) up to the full amount of the DIP Obligations and the Prepetition Secured Obligations, respectively, (y) the DIP Superpriority Claim and both the Adequate Protection Superpriority Claim and any amounts due and owing, but unpaid, under paragraph 4(c) hereof, respectively, without the need for further Court order authorizing the same, in connection with any sale of any of the DIP Collateral or Prepetition Collateral, whether such sale

24

is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise.

5.    **Monitoring of Collateral**.  The Prepetition Agent and the DIP Agent, and their respective consultants and advisors, shall be given reasonable access to the Debtors' books, records, assets and properties for purposes of monitoring the Debtors' businesses and the value of the DIP Collateral, and shall be permitted to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations and inventory appraisals in respect of the DIP Collateral.

6.    **Financial Reporting, etc**.  The Debtors shall provide the DIP Agent and the Prepetition Agent with the monthly financial reporting given to the U.S. Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Loan Documents.

7.    **DIP Lien and Adequate Protection Replacement Lien Perfection**.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.    Notwithstanding the foregoing, the DIP Agent may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and

Americas 90980689 (2K)
84614015.3

other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases. The Debtors shall execute and deliver to the DIP Agent all such financing statements, mortgages, security agreements, notices and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens and the Adequate Protection Liens. The DIP Agent, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. To the extent that the Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan Document, the DIP Agent is also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of this Interim Order and/or the Final Order, as applicable, and the other DIP Loan Documents. The Prepetition Agent shall serve as agent for the DIP Agent for purposes of perfecting its security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

Americas 90980689 (2K)
84614015.3

8.  **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.

(a)  All of the findings in paragraph E hereof and all agreements, terms, provisions and stipulations set forth in paragraph F hereof (the "Claims Stipulations") shall be irrevocably binding on all persons and entities upon the Challenge Period Termination Date (defined below).  Nothing in this Interim Order shall prejudice any rights any party with standing to do so may have (a) to object to or challenge any of the Claims Stipulations, including in relation to (i) the validity, extent, perfection or priority of the Prepetition Liens on the Prepetition Collateral, or (ii) the validity, allowability, priority, status or amount of the Prepetition Secured Obligations, or (b) to bring suit against any of the Prepetition Secured Parties in connection with or related to the matters covered by the Claims Stipulations; provided that, unless any party with standing to do so commences an adversary proceeding or contested matter (as applicable) raising such objection or challenge, including without limitation any claim against the Prepetition Secured Parties in the nature of a setoff, counterclaim or defense to the Prepetition Secured Obligations (including but not limited to, those under Sections 506 (subject to the waiver of Bankruptcy Code Section 506(c) claims as may be provided herein and in the Final Order), 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties), by the date that is (x) with respect to any Creditors' Committee, sixty (60) days following the formation of such Creditors' Committee and (y) with respect to any other party with standing, seventy-five (75) days following entry of the Interim Order (the period described in the immediately preceding clause shall be referred to as the "Challenge Period" and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "Challenge Period Termination Date"), upon the Challenge Period Termination

27

Date, any and all such challenges and objections by any Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest shall be deemed to be forever waived and barred, and the Prepetition Secured Obligations shall be deemed to be allowed secured claims within the meaning of Sections 502 and 506 of the Bankruptcy Code for all purposes in connection with the Cases, and the Claims Stipulations shall be binding on all creditors, interest holders and parties in interest; provided that, if a Chapter 11 trustee or Chapter 7 trustee is appointed herein or in any Successor Case prior to the Challenge Period Termination Date, the Challenge Period Termination Date shall be extended for such Chapter 11 trustee or Chapter 7 trustee to thirty (30) days after their appointment.  To the extent any such objection or complaint is filed prior to the Challenge Period Termination Date, the Claims Stipulations shall nonetheless remain binding and preclusive except to the extent expressly challenged in such objection or complaint. All remedies or defenses of any party with respect to any challenge are hereby preserved.

(b)     No portion of the Carve-Out, no proceeds of the DIP Facility, the DIP Collateral or DIP Extensions of Credit, and no proceeds of the Prepetition Collateral (including Cash Collateral), may be used for the payment of the fees and expenses of any person incurred (i) in investigating, challenging, or in relation to the challenge of, any of the Prepetition Liens, Prepetition Secured Obligations, DIP Liens, or DIP Obligations (or the value of the Prepetition Collateral or the DIP Collateral), or the initiation or prosecution of any claim or action against any of the Prepetition Secured Parties or DIP Secured Parties, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, or any state, local or foreign law, in respect of the Prepetition Secured Obligations or the DIP Facility, or in preventing, hindering or delaying the realization by the Prepetition Secured Parties or the DIP Secured Parties upon any Prepetition

28

Collateral or DIP Collateral, respectively, or the enforcement of their respective rights under this Interim Order, the Final Order, any other DIP Loan Document or any Prepetition Loan Document, (ii) in requesting authorization, or supporting any request for authorization, to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (x) from the DIP Lenders or (y) if such financing is sufficient to indefeasibly pay and satisfy all Prepetition Secured Obligations and DIP Obligations in full in cash and such financing is immediately so used or (iii) in connection with any claims or causes of actions against the Releasees, including formal or informal discovery proceedings in anticipation thereof, and/or in challenging any Prepetition Secured Obligations, DIP Obligations, Prepetition Liens, Adequate Protection Liens or DIP Liens; provided, however, that not more than $25,000 in the aggregate of proceeds of any DIP Extensions of Credit, the DIP Collateral or the Prepetition Collateral (including Cash Collateral) may be used to pay any Allowed Professional Fees incurred in connection with investigating the matters covered by the Claims Stipulations.

9.    **Carve-Out**.

(a)    As used in this Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and all statutory fees payable to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, together with the statutory rate of interest (without regard to the notice set forth in (ii) below); (ii) to the extent allowed by the Court at any time, pursuant to a fee application on notice, or other procedure permitted by any Court order allowing interim compensation or the payment of fees of ordinary course professionals, whether by interim order, final order, procedural order or otherwise, all reasonable and documented unpaid fees and expenses (the "Allowed Professional Fees") incurred by estate

29

professionals retained by the Debtors pursuant to section 327 or 328 of the Bankruptcy Code (collectively, the "Debtor Professionals") and any Committee (together with the Debtor Professionals, the "Professionals") at any time before the delivery by the DIP Agent of a Carve-Out Trigger Notice (defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iii) the Allowed Professional Fees of the Professionals incurred beginning on and after the date of delivery by the DIP Agent of the Carve-Out Trigger Notice in an aggregate amount not to exceed $500,000 (the amounts set forth in this clause (iii) being the "Post Carve-Out Trigger Notice Cap"); provided that the Post Carve-Out Trigger Notice Cap shall be reduced, dollar-for-dollar, by the amount of any fees and expenses incurred and accruing by the Debtors and paid to the applicable Professionals following delivery of the Carve-Out Trigger Notice.  For the avoidance of doubt and notwithstanding anything to the contrary contained in this Interim Order or the Prepetition Loan Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(b)    For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by electronic mail (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee and lead counsel to the Committee, if any, of the occurrence and continuation of an Event of Default, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(c)    On the day on which a Carve-Out Trigger Notice is given by the DIP Agent to the Debtors (the "Termination Declaration Date"), the Carve-Out Trigger Notice shall (i) constitute a demand to the Debtors as of the date of such notice to utilize all cash on hand and

any available cash thereafter held by any Debtors to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees through the Termination Declaration Date; and (ii) be deemed a draw request and notice of borrowing by the DIP Borrower under the DIP Credit Agreement in an amount equal to the then unpaid amounts of the Allowed Professional Fees through the Termination Declaration Date in excess of amounts funded pursuant to clause (i).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay any then-unpaid Allowed Professional Fees (the "Pre-Carve-Out Trigger Notice Reserve") in full prior to payment of any and all other claims and administrative expenses.

(d)    On the Termination Declaration Date, the Carve-Out Trigger Notice shall also be deemed a draw request and notice of borrowing by the DIP Borrower under the DIP Credit Agreement in an amount equal to the Post-Carve-Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay Allowed Professional Fees up to the amount of the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to the payment of any and all other claims and administrative expenses.

(e)    All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) and (ii) of the definition of Carve-Out set forth above until paid in full, but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, shall be paid to the DIP Agent for the benefit of the DIP Lenders until the DIP Obligations have been paid in full, after which any excess shall be paid to other claimants in accordance with their rights and priorities under applicable law.

31

(f)    All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iii) of the definition of Carve-Out set forth above, and then, to the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, shall be paid to the DIP Agent for the benefit of the DIP Lenders until the DIP Obligations have been paid in full, after which any excess shall be paid to other claimants in accordance with their rights and priorities under applicable law.

(g)    Notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order, following delivery of a Carve-Out Trigger Notice, none of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lender shall, nor shall they direct any entity to, sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded.  Further, notwithstanding anything to the contrary in the DIP Loan Documents or this Interim Order: (i) disbursements by the Debtors from the Carve-Out Reserves shall (A) not constitute loans or increase or reduce the DIP Obligations (although the amounts funding such Carve-Out Reserves, to the extent obtained from draws (or deemed draws) under the DIP Facility, shall constitute DIP Extensions of Credit and shall increase the DIP Obligations) and (B) be deemed not to be property of the Debtors' bankruptcy estates; and (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of any remaining portion of the Carve-Out.  Any payment or reimbursement made prior to the occurrence of the Carve-Out Trigger Notice in respect of any Allowed Professional Fees shall not reduce the Carve-Out. The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out.

Americas 90980689 (2K)
84614015.3

10.   **Payment of Compensation**.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or any Committee or shall limit or otherwise affect the right of the DIP Secured Parties and/or the Prepetition Secured Parties or any other party in interest to object to the allowance and payment of any such fees and expenses.  No professional fees shall be paid absent a Court order allowing such payment, pursuant to a fee application on notice, or other procedure permitted by any Court order allowing interim compensation or the payment of fees of ordinary course professionals.  So long as no Event of Default exists that has not been waived in writing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed by the Court and payable under Sections 330 and 331 of the Bankruptcy Code or compensation procedures approved by the Court and in form and substance reasonably acceptable to the Debtors and the DIP Secured Parties, as the same may be due and payable, and the same shall not reduce the Post-Carve-Out Trigger Notice Cap.

11.   **Section 506(c) Claims**.  Subject to the entry of the Final Order, as a further condition of the DIP Facility, any obligation of the DIP Secured Parties to make DIP Extensions of Credit, and the Debtors' authorization to use the Cash Collateral, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action under 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the DIP Collateral, the Prepetition Secured Parties, the Adequate Protection Liens, the Prepetition Liens or the Prepetition Collateral.  Save and except for the Carve-Out, nothing contained in this Interim Order, in the Final Order or in the other DIP Loan Documents shall be deemed a consent by the Prepetition Secured Parties or the DIP Secured

33

Parties to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Collateral under 506(c) of the Bankruptcy Code or otherwise.

      12.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders**. Without limiting any other provisions of this Interim Order, unless the DIP Agent and the Prepetition Agent have provided their prior written consent, it shall be an Event of Default under the DIP Facility for there to be entered in these Cases, or in any Successor Case, any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order to or for the benefit of the DIP Secured Parties or the Prepetition Secured Parties, or (ii) the use of Cash Collateral for any purpose other than as set forth in this Interim Order or in the DIP Budget.

      13.    **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 12 hereof, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations and all Prepetition Secured Obligations (including the cash collateralization of all prepetition letters of credit in accordance with the Prepetition Loan Documents) and the termination of the DIP Secured Parties' obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any Chapter 11 plan or plans (the "Plan") with respect to the Debtors, the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Interim Order or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent or the Prepetition Agent, as the case may be, for

34

application in accordance with paragraph 18(b) hereof, the DIP Loan Documents and the Prepetition Loan Documents, as applicable.

14.    **Cash Management**.  The Debtors' cash management system shall at all times be maintained (i) in accordance with the terms of the DIP Loan Documents and any order of this Court approving the maintenance of the Debtors' cash management system, and (ii) in a manner which in any event shall be reasonably satisfactory to the DIP Agent.  The DIP Agent shall be deemed to have "control" over all cash management accounts for all purposes of perfection under the Uniform Commercial Code.  Until the occurrence of an Event of Default, all amounts collected in the cash collection accounts may be used in accordance with this Interim Order, the DIP Budget and the other DIP Loan Documents; after the occurrence and during the continuance of an Event of Default, subject only to the funding of the Carve-Out and the Debtors' rights under paragraph 17(b) hereof, all such amounts shall be applied in accordance with paragraph 18(b) hereof.

15.    **Disposition of DIP Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Loan Documents or as approved by the Court.

16.    **Survival of Certain Provisions**.  In the event of the entry of any order converting any of these Cases into a Successor Case, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and the Carve-Out shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, Adequate Protection Superpriority Claim and Carve-Out shall maintain their respective priorities as provided by this Interim Order.

35

17.    **Events of Default; Rights and Remedies Upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Secured Parties and the Prepetition Agent is hereby modified so that, upon and after the occurrence of the Termination Date, the DIP Agent and the Prepetition Agent shall, subject to subparagraph (b) of this paragraph 17, be immediately entitled to exercise all of their rights and remedies in respect of the DIP Collateral and the Prepetition Collateral, in accordance with this Interim Order, the other DIP Loan Documents and/or the Prepetition Loan Documents, as applicable.  The term "Termination Date" shall mean: (a) prior to entry of the Final Order, the earliest to occur of (i) thirty-five (35) days after the Petition Date, (ii) the Maturity Date and (iii) this Interim Order ceasing to be in full force and effect for any reason, and (b) subsequent to entry of the Final Order, the earlier to occur of (i) the Maturity Date and (ii) the Final Order ceasing to be in full force and effect for any reason.

(b)    Notwithstanding the foregoing subparagraph (a) of this paragraph 17, immediately following the giving of notice by the DIP Agent to the Debtors, counsel to the Debtors, counsel for any Committee appointed in the Cases and the U.S. Trustee of the occurrence of an Event of Default: (i) all Commitments of the DIP Lenders to provide any DIP Extensions of Credit shall immediately be suspended; (ii) the Debtors shall have no right to request or use any proceeds of any DIP Extensions of Credit or DIP Collateral, or to use Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve-Out, as provided in the applicable DIP Loan Documents and this Interim Order; (iii) the Debtors shall deliver and cause the delivery of the proceeds of the DIP Extensions of Credits and the DIP Collateral to the DIP Agent as provided herein and in the DIP Loan Documents subject to the funding of the Carve-Out; and (iv) the DIP Agent shall be permitted to apply such proceeds in

36

accordance with the terms of this Interim Order and the DIP Loan Documents. The Debtors and any Committee shall be entitled to an emergency hearing before this Court within five (5) days after the giving of written notice by the DIP Agent and/or the Prepetition Agent of the occurrence of an Event of Default. If the Debtors or any Committee or any other party in interest, does not contest the occurrence of the Event of Default within such five (5) day period, or if there is a timely contest of the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic stay, as to the DIP Agent and the Prepetition Agent, shall automatically terminate in all respects. Nothing herein shall preclude the DIP Agent or the Prepetition Agent from seeking an order from the Court upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee, counsel to the Debtors and counsel to the Committee, if any, authorizing the DIP Agent and/or the Prepetition Agent to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than five (5) days' notice, or the Debtors' right to contest such relief.

(c)    Upon the occurrence of the Termination Date (but subject, only in the case of the occurrence of the Termination Date resulting from an Event of Default, to the provisions of paragraph 17(b) hereof), the DIP Agent and the Prepetition Agent are authorized to exercise all remedies and proceed under or pursuant to the applicable DIP Loan Documents and the Prepetition Loan Documents. All proceeds realized in connection with the exercise of the rights and remedies of the applicable DIP Secured Parties and Prepetition Secured Parties shall be turned over and applied in accordance with paragraph 18(b) hereof.

Americas 90980689 (2K)
84614015.3

(d)      The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Adequate Protection Liens and the DIP Liens and to incur all DIP Obligations and all liabilities and obligations to the Prepetition Secured Parties hereunder and under the other DIP Loan Documents, as the case may be, and (ii) authorize the DIP Agent and Prepetition Agent to retain and apply payments, and otherwise enforce their respective rights and remedies hereunder subject to the provisions of paragraph 17(b) hereof.

(e)      Nothing included herein shall prejudice, impair or otherwise affect the Prepetition Agent's or the DIP Agent's rights to seek (on behalf of the Prepetition Secured Parties and the DIP Secured Parties, respectively) any other or supplemental relief in respect of the Debtors (including, as the case may be, other or additional adequate protection).

(f)      Notwithstanding anything in this Interim Order to the contrary, the Prepetition Agent shall not be permitted to exercise any rights or remedies for itself or the Prepetition Secured Parties unless and until the DIP Obligations are indefeasibly paid and satisfied in full in cash.

18.    **Applications of Proceeds of Collateral, Payments and Collections**.

(a)      As a condition to the DIP Extensions of Credit and the authorization to use Cash Collateral, each Debtor has agreed that proceeds of any DIP Collateral and Prepetition Collateral, any amounts held on account of the DIP Collateral or Prepetition Collateral, and all payments and collections received by the Debtors with respect to all proceeds of DIP Collateral and Prepetition Collateral, shall be used and applied in accordance with the DIP Loan Documents (including repayment and reduction of the DIP Obligations), the DIP Budget (subject to variances permitted under the DIP Credit Agreement) and this Interim Order.

38

(b)    Subject to the Debtors' rights under paragraph 17(b) hereof and the funding of the Carve-Out, if applicable, upon and after the occurrence of the Termination Date, all proceeds of DIP Collateral and Prepetition Collateral, whenever received, shall be paid and applied as follows: (i) *first*, to permanently and indefeasibly repay and reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents, until paid and satisfied in full in cash; (ii) *second*, to permanently and indefeasibly repay and reduce the Prepetition Secured Obligations then due and owing in accordance with the Prepetition Loan Documents, until paid and satisfied in full in cash (including the cash collateralization of all prepetition letters of credit in accordance with the Prepetition Loan Documents); and (iii) *third*, to the Debtors' estates. For avoidance of doubt, nothing in this Interim Order shall be construed to limit the voluntary and mandatory repayment provisions set forth in the DIP Loan Documents.

19.    **Depositary**. In connection with the DIP Facility, the Depositary shall continue in its capacity as depositary under the Depositary Agreement and the DACA, including with respect to any rights to payment of fees, costs and expenses and any indemnification rights thereunder accruing on or after the Petition Date and the DIP Agent shall be deemed to benefit from the Depositary Agreement and the DACA to the same extent as the Prepetition Agent.

20.    **Replacement of Prepetition Agent**. In connection with the Resignation and Appointment Agreement, all references in the Prepetition Loan Documents to the "Agent," "Administrative Agent" and "Collateral Agent" are hereby deemed to be a reference to CLMG Corp., as successor Prepetition Agent. The Prepetition Agent is hereby authorized to accept transfers of Prepetition Collateral from the resigning agent under the Prepetition Loan Documents and to take or refrain from taking any other action to effectuate its appointment as Prepetition Agent permitted under the Prepetition Loan Documents, including filing or recording

Americas 90980689 (2K)
84614015.3

amendments, supplements or modifications to any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to effectuate the appointment of CLMG Corp. as Prepetition Agent. Notwithstanding the foregoing, the Prepetition Agent may, in its sole discretion, file any such amendments, supplements or modifications to any financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases. The Debtors shall execute and deliver to the Prepetition Agent all such amendments, supplements or modifications to any financing statements, mortgages, security agreements, notices and other documents as the Prepetition Agent may reasonably request to evidence, confirm, or validate the appointment of CLMG Corp. as Prepetition Agent.

21.    **Proofs of Claim, etc**. None of the DIP Secured Parties or the Prepetition Secured Parties shall be required to file proofs of claim in any of the Cases or any Successor Case for any claim allowed herein. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Case to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties, and the Prepetition Agent, on behalf of itself and the Prepetition Secured Parties, respectively, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in any of the Cases or any Successor Case for any claim allowed herein; for avoidance of doubt, any such proof of claim

Americas 90980689 (2K)
84614015.3

may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. Any proof of claim filed by the DIP Agent or the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Secured Parties or Prepetition Secured Parties. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Case shall not apply to the DIP Agent, the other DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Parties.

22.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order**.  Based on the findings set forth in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby.  Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens or of the DIP Superpriority Claim granted to or for the benefit of the DIP Secured Parties shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and the DIP Superpriority

41

Claim granted herein, with respect to any such claim. Because the DIP Extensions of Credit are made in reliance on this Interim Order, the DIP Obligations incurred by the Debtors or owed to the DIP Secured Parties prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Cases or in any Successor Case, be disallowed or subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Interim Order.

        (b)    **Expenses**. To the fullest extent provided in the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order, the Debtors will pay all expenses incurred by the DIP Secured Parties, the Prepetition Agent and the Prepetition Secured Parties (including, without limitation, the reasonable fees and disbursements of their counsel, any other local counsel that they shall retain and any internal or third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding and administration of the DIP Loan Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Loan Documents, (ii) the administration of the Prepetition Loan Documents, (iii) the Cases or any Successor Case, or (iv) enforcement of any rights or remedies under the DIP Loan Documents or the Prepetition Loan Documents, in each case whether or not the transactions contemplated hereby are fully consummated. Notwithstanding any other provisions of this Interim Order, the Prepetition Agent, the Prepetition Secured Parties and the DIP Secured Parties, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted if necessary for privileged, confidential or otherwise sensitive information, as to those statements

42

provided to any party other than the U.S. Trustee) to the Office of the U.S. Trustee and counsel for any Committee and the Debtors. Thereafter, within ten (10) days of presentment of such statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made, the Debtors shall pay in cash all such fees and expenses of the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent and the DIP Secured Parties, and their advisors and professionals. Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, any Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall resolve any dispute as to the reasonableness of any fees and expenses. For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Interim Order, the fees specified in Section 2.08 of the DIP Credit Agreement are, upon entry of this Interim Order and irrespective of any subsequent order approving or denying the DIP Facility or any other financing pursuant to Section 364 of the Bankruptcy Code, fully entitled to all protections of Section 364(e) of the Bankruptcy Code and are deemed fully earned, indefeasibly paid, non-refundable, irrevocable and non-avoidable as of the date of this Interim Order.

(c)     **Binding Effect**.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary

43

hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Case, or upon dismissal of any such Chapter 11 or Chapter 7 case.

(d)     **No Waiver**.  The failure of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the other DIP Loan Documents or the Prepetition Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Prepetition Secured Parties' rights hereunder, thereunder or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent and the Prepetition Agent (i) to request conversion of any of the Cases to cases under Chapter 7, dismissal of any of the Cases, or the appointment of a trustee in any of the Cases, or (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the Prepetition Secured Parties.

(e)     **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(f)     **Intercreditor Matters**.  Nothing in this Interim Order shall be construed to convey on any individual DIP Secured Party or Prepetition Secured Party any consent, voting

44

or other rights beyond those (if any) set forth in the DIP Loan Documents and Prepetition Loan Documents, as applicable.    Nothing in this Interim Order shall be construed to impair or otherwise affect any intercreditor, subordination or similar agreement or arrangement in respect of the Prepetition Secured Obligations, which are enforceable to the fullest extent provided by Section 510(a) of the Bankruptcy Code and applicable law.

(g)    **No Marshaling**.  Subject to the entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(h)    **Section 552(b)**.  Subject to the entry of the Final Order, the DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(i)    **Amendment**.  The Debtors and the DIP Agent (with the consent of the requisite DIP Secured Parties as provided in and consistent with their respective rights under the DIP Loan Documents) may amend, modify, supplement or waive any provision of the DIP Loan Documents without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (w) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the DIP Facility, (x) increases the commitments of the DIP Lenders to make DIP Extensions of Credit under the DIP Loan Documents, (y) changes the Termination Date or (z) otherwise is materially adverse to the

Americas 90980689 (2K)
84614015.3

interests of the Debtors or their estates.  Except as otherwise provided herein, no waiver, modification or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and approved by the Court after notice to parties in interest.

(j)     **Priority of Terms**.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Interim Order shall govern.

(k)     **Survival of Interim Order**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in any of the Cases, (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of this Interim Order, the DIP Loan Documents and the Prepetition Loan Documents, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Interim Order, the DIP Loan Documents and the Prepetition Loan Documents and any priorities and protections granted to or for the benefit of the DIP Secured Parties and Prepetition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority

Americas 90980689 (2K)
84614015.3

Claim) hereunder and thereunder, shall continue in full force and effect to the fullest extent provided by section 364(e) of the Bankruptcy Code.

(l)     **Enforceability**. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)     **No Waivers or Modification of Interim Order**. The Debtors irrevocably waive any right to seek any modification or extension of this Interim Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agent. The Debtors may not seek to modify or to alter relative lien priority of the DIP Liens, the Prepetition Liens and the Adequate Protection Liens set forth in this Interim Order.

(n)     **Waiver of any Applicable Stay**. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

23.     **Final Hearing**.

(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for March 3, 2016, at 10:00 a.m. (EST) at the United States Bankruptcy Court for the District of Delaware.

(b)     On or before two business days after entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to any Committee after the same has been

47

appointed, or Committee counsel, if the same shall have been appointed; the Internal Revenue Service, the state taxing authorities in any state in which the Debtors do business, any federal or state regulatory authorities governing the Debtors' industry, the U.S. Attorney's Office, the Delaware Attorney General, and the U.S. Trustee . The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than February 26, 2016 at 4:00 p.m. (EST), except that any objections by any committee of unsecured creditors may be filed no later than the Final Hearing, which objections shall be served so that the same are received on or before such date by: (a) proposed counsel for the Debtors, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3700, Dallas, TX 75201-2975, Attn: Paul E. Heath, 666 Fifth Avenue, 26th Floor, New York, NY 10103-0040, Attn: David S. Meyer; (b) proposed co-counsel for the Debtors, Drinker Biddle & Reath, LLP, 222 Delaware Avenue, Suite 1400, Wilmington DE 19801, Attn: Steven K. Kortanek; (c) counsel for the DIP Agent and the Prepetition Agent, White & Case LLP, Attn: Scott Greissman and Andrew Zatz, 1155 Avenue of the Americas, New York, NY 10036-2787; and (d) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Juliet Sarkessian.

(c)     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Court February 12 , 2016.

_____
**THE HONORABLE KEVIN J. CAREY**
**UNITED STATES BANKRUPTCY JUDGE**

Americas 90980689 (2K)
84614015.3