## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: ) | Case No. 16-10369 (KJC) |
| ) | Chapter 11 |
| Sundevil Power Holdings, LLC, *et al.* ) | Jointly Administered |
| Debtors. ) | Hearing Date: March 3, 2016 at 10 a.m. |
| ) | Objections Due: February 25, 2016, at 4 p.m., extended to March 1, 2016 at 9 a.m. for the U.S. Trustee |

**OBJECTION OF THE ACTING U.S. TRUSTEE TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I) ESTABLISHING BIDDING AND SALE PROCEDURES; (II) APPROVING THE SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF**

Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned attorneys, hereby submits this objection to the Debtors' Motion For Entry Of Orders (I) Establishing Bidding And Sale Procedures; (II) Approving The Sale Of Assets; And (III) Granting Related Relief (Docket No. 17) (the "Motion"), and in support of that objection states as follows:

### PRELIMINARY STATEMENT

1. The Debtors' Motion seeks approval of bid procedures for a 363 sale, but includes almost no information regarding the terms of the sale – no sale price or price floor, no form of asset purchase agreement ("APA"), and no identification of a stalking horse or other potential buyer. It is unclear whether any such information will be provided prior to the sale objection deadline sought by the Debtors, and if so, whether it will be sufficiently far in advance of such deadline to provide adequate notice to allow parties in interest to determine whether to object.

2. Although no stalking horse has yet been identified, the Debtors request advance approval from the Court to pay a break-up fee of up to 3% of the cash portion of the purchase price to any stalking horse that might later be identified. The motion also seeks to have the break-up fee granted super-priority administrative claim status.

3. In the absence of a stalking horse demanding payment of a break-up fee, the Debtors cannot meet its burden of establishing that a break-up fee is an actual and necessary expense of the estate under 11 U.S.C. § 503(b). That portion of the Debtors' Motion should therefore be denied as premature.

4. If a point in time comes when the Debtors identify a stalking horse, and they move for approval of a break-up fee, the Debtors' request to have such break-up fee granted super-priority administrative claim status should be denied. There are only two types of claims under the Bankruptcy Code that are provided such status, claims securing post-petition debtor-in-possession financing, and claims of pre-petition secured parties for adequate protection. A break-up fee does not fall under either of those categories.

5. It is worth nothing that this is *not* a case in which the Debtors are seeking an extremely abbreviated sale process. Based on the dates being requested by the Debtors in the Motion, there will be a two month period between the hearing on the bid procedures and the auction. That should provide more than enough time for the Debtors to file a form APA which includes a floor on the sale price, and, if a stalking horse comes forward and requires a break-up fee, to move for approval of the same.

6. There are a number of other provisions in the bid procedures that are objectionable. One such provision allows the Debtors' pre-petition lender, who is also the DIP lender, to credit bid, while at the same time requiring the Debtors to consult with representatives

of such lenders through every step of the bid process, such as determining who the qualified bidders are, and selecting the highest and best bid at auction.[1] Those consultation rights should end once a lender becomes a bidder, so as not to afford such lender an unfair advantage over other bidders.

7.   Other provisions should not be approved because they do not afford due process to the Debtors' creditors and contract counterparties, or because they allow the Debtors too much latitude to modify the bid procedures, or because they do not comply with the Local Rules of this Court.

8.   For these reasons, as detailed below, the U.S. Trustee respectively requests that the Motion be denied.

## JURISDICTION

9.   Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

10.   Pursuant to 28 U.S.C. § 586(a)(3), the U. S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

---

[1]   The Debtors cannot also consult with an Official Committee of Unsecured Creditors, because one has not been appointed in this case.

11. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this objection.

**BACKGROUND**

12. On February 11, 2016 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

13. The Debtors continue to operate their business and manage their properties as debtor-in-possessions pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14. No statutory committee of unsecured creditors has been appointed in these cases.

15. On the Petition Date, the Debtors filed the Motion, which seeks approval of bidding procedures for the sale of the Debtors' assets. The Motion does not identify any stalking horse, does not attach a form APA, or otherwise set forth the terms of any sale, and does not set any floor on the bid price for the Debtors' assets.

16. Although no stalking horse is identified in the Motion, the Motion seeks advance Court approval to provide any stalking horse bidder that might come forward with a break-up fee not to exceed 3% of the cash portion of the purchase price. *See* Motion, page 12.

17. The Debtors request the Court to order that the break-up fee be given super-priority administrative expense status. *See id., see also* Proposed Order attached to Motion, Dkt. No. 17-1, pp. 5 and 6 of 21, ¶ 5.

18. The Bid Procedures include the following additional provisions, to which the U.S. Trustee objects:

(a) Most or all of the salient terms of the sale will not be known until the conclusion of the auction. Yet the Debtors are unwilling to file and serve on requesting parties this information promptly after the close of the auction. The Debtors are also unwilling to allow affected parties, including counterparties whose contracts or leases shall be assigned to the successful bidder, to raise objections regarding the successful bidder orally at the sale hearing. Rather, the Debtors seek to require objecting parties to file and serve written objections as to the successful bidder prior to the sale hearing, even thought there will be only a day or two between when the Debtors seek to provide notice of the success bidder, and their proposed objection deadline.

(b) The Debtors will not be providing sufficient notice of assumption and assignment, and the cure amount, to those counterparties whose contracts and leases are added later in the bid process.

(c) The Debtors are required to consult with representatives of the Debtors' pre-petition lenders, who are also the DIP lenders, even in the event any of such lenders becomes a bidder.[2]

(d) The Debtors seek to preclude their creditors from attending the auction, despite the requirement of Local Rule 6004-1 (c)(ii)(C) of this Court, which provides that auctions shall be conducted openly and all creditors allowed to attend.

(e) The Debtors include a reservation of rights at the end of the Bid Procedures that allows them to modify, in any way they wish, the Bid Procedures that they seek this Court to approve, without providing any notice of the same to the Court or any parties in interest in these cases, other than their lenders.

---

[2] The Bid Procedures give the pre-petition and DIP lenders the right to credit bid.

5

## **ARGUMENT**

**Adequate Notice of the Terms of the Sale are Required for Due Process**

19.     The Third Circuit restated the basic principle of due process in *Folger Adam Security, Inc. v. DeMatteis/MacGregor*, 209 F.3d 252 (3d Cir. 2000): "Due process requires notice reasonable calculated, under the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 265 (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314-15, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

20.     In order to determine whether to object to the proposed sale, creditors and other parties in interest need to have sufficient notice of the terms of the sale, the price and the identity of the purchaser.  Similarly, in order to determine whether to object to assumption and assignment, counterparties to contracts or leases need to have sufficient notice of the cure amount and the identity of the assignee, and sufficient time to request proof of adequate performance by such assignee.  When a sale in bankruptcy contemplates an auction, the final sale price, and the identity of the successful bidder, is not known until the close of the auction. However, certain information can, and typically is, filed with the bid procedures motion, such as a form APA, which includes a minimum price for the assets, and other terms of the sale, such as liabilities to be assumed and assets to be excluded from the sale.  The Motion in these cases, however, contains no such information, and it is unclear whether such information will be filed before the sale objection deadline.  Without being provided such information in a timely manner, creditors and contract counterparties will not be able to make a reasoned determination as to whether to object to the sale.

21.     It appears that the Debtors intend to wait until a few days after the auction to provide their creditors and contract counterparties with the material information regarding the terms of the sale. Then, rather than allowing such parties to raise objections at the sale hearing as to such new information, the Debtors are seeking to require them to file written objections prior to the sale hearing date. This would appear to provide such parties, at best, with one or two days to prepare, file and serve written objections. Such notice is not sufficient due process under *Folger Adam*. Moreover, given the sale schedule proposed by the Debtors, there is plenty of time to provide parties in interest with adequate notice and an opportunity to be heard.

**A Break-Up Fee Cannot Be Approved at this Time,
and Is Not Entitled to Superpriority Administrative Status at Any Time**

22.     The U.S. Trustee further objects to the Motion because a break-up fee is not appropriate at this time under relevant Third Circuit law. Bid protections are ordinarily predicated on the stalking horse having (a) placed the estate's property in a sales posture to attract other bidders to the auction, (b) actually serving as a catalyst to attract additional bids, or (c) in some other way preserving or enhancing the value of the estates. No bid protections should be awarded, if at all, until after an acceptable offer has been received from a stalking horse who has provided a demonstrated benefit to the estate; someone who is able to assert an administrative expense claim under 11 U.S.C. § 503(b) for the actual and necessary cost and expense of preserving the estate. *See In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010); *Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.*), 181 F.3d 527, 535 (3d Cir. 1999) ("the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate").

23. The burden is on the Debtors to prove the necessity of, and benefit to the estate from, any proposed bid protections. In addition, although "the considerations that underlie the debtor's judgment may be relevant to the bankruptcy court's determination on a request for break-up fees and expenses," "the business judgment rule should not be applied as such in the bankruptcy context." *O'Brien*, 181 F.3d at 535.

24. As recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose. For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered* .... In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added).[3]

25. As no stalking horse has been identified, there is no way for the Court to determine if a stalking horse would nevertheless bid if a break-up fee was not provided. Thus, under *O'Brien*, the break-up fee "cannot be characterized as necessary to preserve the value of the estate." *See id.*

26. Accordingly, that portion of the Motion seeking approval of the break-up fee, or any other bid protections, should be denied at this time, because there is no prospective sale arranged yet, and no stalking horse bidder has even been identified. The Debtors are seeking court approval of an administrative expense before an administrative expense claimant has provided any benefit to the estate. The relief sought is premature, and should therefore be denied.

---

[3] *See also In re Reliant Energy Channelview LP*, 200 F.3d 594 (3d Cir. 2010) (affirming disallowance of retroactive grant of break-up fee that was sought after the stalking horse bidder had bid for the assets).

27.     If any break-up fee were to be allowed in the future, there is no basis under the Bankruptcy Code to give such fees super-priority administrative claim status, as requested by the Debtors.  Under the Bankruptcy Code, superpriority claim status is limited to (a) claims of entities providing post-petition financing, and (b) claims of pre-petition secured lenders for adequate protection for diminution in value of their collateral during the bankruptcy case.  *See* 11 U.S.C.  §§ 361(2), 364(c)(1) and 507 (b).  As a break-up fee falls under neither of these two categories, it cannot be given super priority administrative claim status.

**Other Issues**

28.     Local Rule 6004-1(c)(ii)(C) of this Court provides that auctions "will be conducted openly and all creditors will be permitted to attend."  The proposed order approving bid procedures that was attached to the motion did include such a provision.  *See* Dkt. No. 17-1, page 6 of 21, ¶ 6.  However, the Bid Procedures themselves restricted attendance to only qualified bidders, the Debtors and their lenders, and the committee of unsecured creditors, if one were to be appointed.  *See id.*, page 17 of 21.  Counsel to the U.S. Trustee pointed out the inconsistency, and asked that the provision in the Bid Procedures be modified to conform to the proposed order, and the Local Rule.  The Debtors' response was instead to modify the provision in the proposed order, so that it too foreclosed creditors from being able to attend the auction. The Debtors have provided no reason as to why the Local Rule's requirements should be disregarded in these cases.  It cannot be a concern of overcrowding the auction, as the Debtors' filings show that they have only a handful of unsecured creditors.

29.     Another provision of the Bid Procedures requires the Debtors to consult with representatives of the Debtors' pre-petition lenders, who are also the DIP lenders, even in

9

the event any of such lenders becomes a bidder. Such consultation rights should cease if and when a lender becomes a bidder. Otherwise, the lenders are provided with an unfair advantage over that of other bidders.

30. Finally, the Debtors include a reservation of rights at the end of the Bid Procedures that allows them to modify, in any way they wish, the Bid Procedures after this Court approves the same. *See* Dkt. No. 17-1, page 21 of 21. The particular examples listed in such reservation of rights are not themselves objectionable, with one exception, which allows the Debtors to reject all Qualified Bids if they believe such action is warranted in the exercise of their judgment. The reservation uses the phrase, "including without limitation," when listing the examples, thereby allowing the Debtors to make other alterations to the bid procedures without providing any notice of the same to the Court or any parties in interest in these cases, other than their lenders. There is little point in filing a motion that seeks Court approval of certain procedures if the Debtors can simply change all such procedures in their discretion after Court approval. Thus, the reservation of rights should be limited to the type of modifications specified therein, other than the provision allowing the Debtors to reject all Qualified Bids.

## **RESERVATION OF RIGHTS**

31. The U. S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

10

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: March 1, 2016
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**
**Region 3**

By: */s/ Juliet Sarkessian*
Juliet Sarkessian, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
Juliet.M.Sarkessian@usdoj.gov