**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Case No. 16-10369 (KJC) |
|  | Chapter 11 |
| Sundevil Power Holdings, LLC, *et al.*, |  |
|  | (Jointly Administered) |
| Debtors.[1] |  |

### DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

Dated: December 21, 2016
      Wilmington, Delaware

DRINKER BIDDLE & REATH LLP
Steven K. Kortanek (Del. Bar No. 3106)
Patrick A. Jackson (Del. Bar No. 4976)
Joseph N. Argentina, Jr. (Del. Bar No. 5453)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Tel: (302) 467-4200
Fax: (302) 467-4201
Steven.Kortanek@dbr.com
Patrick.Jackson@dbr.com
Joseph.Argentina@dbr.com

*Counsel to the Debtors
and Debtors-in-Possession*

---

[1]    The Debtors in these chapter 11 cases, and the last four digits of their respective federal tax identification numbers, are Sundevil Power Holdings, LLC (2308) and SPH Holdco LLC (7777). The Debtors' service address is: 701 East Lake Street, Suite 300, Wayzata, Minnesota 55391.

# TABLE OF CONTENTS

**Page**

SECTION 1    DEFINITIONS AND INTERPRETATION ........................................................... 1

SECTION 2    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS ........................ 11

    2.1    Administrative Expense Claims. ....................................................................... 11

    2.2    Bar Date for Administrative Expense Claims Other than Professional
        Compensation Claims. ....................................................................................... 11

    2.3    Accrued Professional Compensation Claims. .................................................... 12

    2.4    Priority Tax Claims. .......................................................................................... 12

SECTION 3    CLASSIFICATION OF CLAIMS AND INTERESTS ................................................ 13

SECTION 4    TREATMENT OF CLAIMS AND INTERESTS ...................................................... 13

    4.1    Class 1—Other Priority Claims. ....................................................................... 13

    4.2    Class 2—Secured Tax Claims. .......................................................................... 14

    4.3    Class 3—Secured Lender Claim. ....................................................................... 15

    4.4    Class 4—Other Secured Claims. ....................................................................... 15

    4.5    Class 5—General Unsecured Claims. ................................................................ 17

    4.6    Class 6—Intercompany Claims. ........................................................................ 17

    4.7    Class 7—Equity Interests in Sundevil. ............................................................. 17

    4.8    Class 8—Equity Interests in Holdco. ................................................................ 17

SECTION 5    ACCEPTANCE OR REJECTION OF THE PLAN ................................................... 18

    5.1    Impaired Classes. .............................................................................................. 18

    5.2    Acceptance by a Class. ...................................................................................... 18

    5.3    Claims and Interests Not Entitled to Vote. ....................................................... 18

SECTION 6    MEANS FOR IMPLEMENTATION ..................................................................... 19

    6.1    Cancelation of Existing Securities and Agreements .......................................... 19

    6.2    Closing of Holdco Case and Dissolution of Holdco. ........................................ 19

    6.3    Plan Transactions. ............................................................................................. 19

    6.4    Effectuating Documents and Further Transactions. .......................................... 19

    6.5    Authority to Act. ............................................................................................... 20

    6.6    Liquidating Trust. ............................................................................................. 20

    6.7    Continued Prosecution of the Arizona Tax Refund Claim ................................ 23

    6.8    Wind-Down Amount ......................................................................................... 23

    6.9    Claims for Indemnification by the Indemnified Parties. ................................... 24

    6.10    Closing of Sundevil Case and Dissolution of Sundevil. ................................... 24

SECTION 7      DISTRIBUTIONS ............................................................................................... 24

    7.1      [RESERVED] ..................................................................................................... 24

    7.2      Date of Distributions ......................................................................................... 24

    7.3      Postpetition Interest on Claims. ........................................................................ 25

    7.4      Disbursements by the Liquidating Trustee. ...................................................... 25

    7.5      Delivery of Distributions. .................................................................................. 25

    7.6      Unclaimed Distributions. ................................................................................... 25

    7.7      Manner of Payment ............................................................................................ 26

    7.8      Setoffs. ............................................................................................................... 26

    7.9      Minimum Distributions ...................................................................................... 26

    7.10    Allocation of Distributions Between Principal and Interest. ............................. 26

    7.11    Distributions Free and Clear. ............................................................................. 26

SECTION 8      PROCEDURES FOR DISPUTED CLAIMS ................................................... 27

    8.1      Allowance of Claims. ........................................................................................ 27

    8.2      Objections to Claims. ........................................................................................ 27

    8.3      Estimation of Claims. ........................................................................................ 27

    8.4      Distributions Relating to Disputed Claims. ...................................................... 27

    8.5      Distributions after Allowance. .......................................................................... 28

    8.6      Preservations of Rights to Settle Claims. ......................................................... 28

    8.7      Disallowed Claims. ............................................................................................ 28

SECTION 9      EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................... 29

    9.1      General Treatment. ............................................................................................. 29

    9.2      Rejection Damages Claims. ............................................................................... 29

    9.3      Reservation of Rights ......................................................................................... 29

SECTION 10    CONDITIONS PRECEDENT TO EFFECTIVE DATE ................................... 30

    10.1     Conditions Precedent. ........................................................................................ 30

    10.2     Waiver of Conditions. ........................................................................................ 30

    10.3     Effect of Failure of Conditions. ........................................................................ 30

SECTION 11    EFFECT OF CONFIRMATION ..................................................................... 31

    11.1     Binding Effect. ................................................................................................... 31

    11.2     [RESERVED] ..................................................................................................... 31

    11.3     Compromise and Settlement of Claims and Controversies. ............................. 31

    11.4     Injunction. .......................................................................................................... 31

    11.5     Term of Injunctions or Stays ............................................................................. 32

    11.6     Debtor and Estate Releases ................................................................................ 33

11.7    Releases by Certain Holders of Claims. ........................................................ 33

11.8    Exculpation. ................................................................................................. 34

11.9    Release of Liens. .......................................................................................... 35

11.10   Scope of Releases. ....................................................................................... 35

11.11   Retention of Causes of Action/Reservation of Rights. ................................. 35

11.12   Cancellation of Agreement, Notes, and Interests. ........................................ 35

SECTION 12    RETENTION OF JURISDICTION ................................................................ 36

SECTION 13    MISCELLANEOUS PROVISIONS ............................................................... 37

13.1    Payment of Statutory Fees. .......................................................................... 37

13.2    Substantial Consummation. .......................................................................... 38

13.3    Operations Between the Confirmation Date and the Effective Date. ............. 38

13.4    Determination of Tax Liabilities. .................................................................... 38

13.5    Amendments. ............................................................................................... 38

13.6    Revocation or Withdrawal of the Plan. .......................................................... 38

13.7    Continuing Exclusivity of Debtors' Right to File and to Solicit Acceptances of a
        Chapter 11 Plan. ........................................................................................... 39

13.8    Records Retention and Destruction Procedures. ........................................... 39

13.9    Severability. ................................................................................................. 39

13.10   Governing Law. ............................................................................................ 40

13.11   Time. ............................................................................................................ 40

13.12   Binding Effect on Debtors, Holders and Successors and Assigns. ............... 40

13.13   Entire Agreement. ........................................................................................ 40

13.14   Effective Notice. ........................................................................................... 41

Sundevil Power Holdings, LLC and SPH Holdco LLC (collectively, the "*Debtors*" or the "*Company*") hereby propose the following joint plan pursuant to Chapter 11 of the Bankruptcy Code:

## SECTION 1   DEFINITIONS AND INTERPRETATION

A.    **Definitions.**

The following terms used herein shall have the respective meanings defined below (other defined terms referenced within a definition shall, where convenience warrants, have citations to the relevant Definition section styled as "(§ 1.____)"):

1.1    *Accrued Professional Compensation Claims* means all Claims for accrued fees and expenses (including transaction or sale fees) for services rendered by a Professional through and including the Plan Confirmation Date (§ 1.57), to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order (§ 1.45) or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses, and subject to the budget approved in connection the Final DIP Order (§ 1.37).  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claims.

1.2    *Administrative Expense Claim* means any Claim pursuant to Bankruptcy Code sections 503(b) and 507(a)(1) arising from actual, necessary costs or expenses of administration of the Chapter 11 Cases and preservation of the Debtors' Estates.

1.3    *Administrative Expense Claim Bar Date* means the date that is the first Business Day (§ 1.13) that is thirty (30) days after the Effective Date (§ 1.34).

1.4    *Affiliate* shall have the meaning set forth in Bankruptcy Code section 101(2).

1.5    *Allowed* means, with respect to any Claim, (i) a Claim against a Debtor that has been listed on the Debtor's Schedules (§ 1.75), as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest or as to which any objection has been determined by a Final Order (§ 1.39) to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or pursuant to this Plan.  Any Claim that has been listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been filed, is not considered Allowed.

1.6    *Arizona Tax Refund Claim* means any claim, right or interest of Sundevil (§ 1.82) in or to any refund, rebate, abatement or other recovery of Taxes (including any

interest due thereon or penalty rebate arising therefrom) with respect to appeals filed with the Arizona Department of Revenue regarding Sundevil's property tax assessments for the 2013, 2014 and 2015 property tax years.

1.7 ***Asset Purchase and Sale Agreement*** means that certain Asset Purchase and Sale Agreement, dated as of August 10, 2016 among Sundevil (§ 1.82), Buyer 1 (§ 1.14), and Buyer 2 (§ 1.14), a true and correct copy of which is attached as Annex 1 to the Sale Order (§ 1.74).

1.8 ***Assets*** means all tangible and intangible assets of every kind and nature of the Debtors and the Estates, including, without limitation, the Causes of Action (§ 1.16), and all proceeds thereof.

1.9 ***Avoidance Actions*** means, subject to the releases, exculpations, and injunctions set forth in this Plan, any and all avoidance, recovery, subordination, or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law including actions or remedies under Chapter 5 of the Bankruptcy Code.

1.10 ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.11 ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware.

1.12 ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and any local rules, procedures, or standing orders of the Bankruptcy Court applicable to the Chapter 11 Cases.

1.13 ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

1.14 ***Buyer 1*** and ***Buyer 2*** mean, respectively, CXA Sundevil Power I, Inc., and CXA Sundevil Power II, Inc. (collectively, the "***Buyers***").

1.15 ***Cash*** means legal tender of the United States of America.

1.16 ***Cause of Action*** means any action, claim, cause of action, controversy, demand, rights, Lien (§ 1.50), indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date (§ 1.55), in contract or in tort, in law or in equity or pursuant to any other theory of law including, among other things: (a) Avoidance Actions (§ 1.9); (b) any rights of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (c) the right to object to Claims or

interests; (d) any claim or defense, including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; and (f) any claim against Persons (§ 1.54) or Entities (§ 1.35) that are not released by this Plan or the Final DIP Order (§ 1.37), including such Entity's directors, officers, employees, agents, Affiliates (§ 1.4), parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, restructuring advisors, investment bankers, accountants and other professionals or representatives when acting in any such capacities.

1.17    ***Chapter 11 Cases*** means the above-captioned cases commenced in the Bankruptcy Court by the Debtors pursuant to chapter 11 of the Bankruptcy Code.

1.18    ***Claim*** means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

1.19    ***Claims Bar Date*** means (i) April 11, 2016 at 5:00 p.m. (EST) for parties other than governmental units, (ii) August 11, 2016 at 5:00 p.m. (EST) for governmental units, or (iii) such other date established by order of the Bankruptcy Court by which Proofs of Claim must have been filed.

1.20    ***Class*** means any group of Claims or Interests classified in SECTION 3 of this Plan pursuant to Bankruptcy Code section 1122.

1.21    ***Collateral*** means any property or interest in property of the Estate of any Debtor subject to a valid Lien (§ 1.50), charge, or other encumbrance to secure the payment or performance of a Claim (§ 1.18).

1.22    ***Contingent Claim*** means any contingent or unliquidated Claim asserted or which may be asserted against any Debtor.

1.23    ***D&O Liability Insurance Policies*** means all insurance policies of any of the Debtors for directors', managers', and officers' liability.

1.24    ***Debtors*** means Sundevil Power Holdings, LLC and SPH Holdco LLC.

1.25    ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases (§ 1.17) pursuant to Bankruptcy Code sections 1101, 1107(a), and 1108.

1.26    ***DIP Agent*** means the DIP Agent as identified in the Final DIP Order (§ 1.37) and the other DIP Loan Documents.

1.27    ***DIP Claim*** means the total outstanding obligations under and pursuant to the Final DIP Order (§ 1.37) and the other DIP Loan Documents (§ 1.29).

1.28    ***DIP Lenders*** means the lenders under and pursuant to the Final DIP Order (§ 1.37).

1.29    ***DIP Loan Documents*** has the meaning set forth in the Final DIP Order (§ 1.37).

1.30    ***Disbursing Agent*** means any Entity (§ 1.35) chosen by the Debtors or the Liquidating Trustee pursuant to Section 7.4 hereof.

1.31    ***Disclosure Statement*** means that certain disclosure statement relating to this Plan as amended or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

1.32    ***Disputed Claim*** means a Claim (§ 1.18), or any portion thereof:  (i) listed on the Schedules as unliquidated, disputed, and/or contingent for which no proof of claim in a liquidated and non-contingent  amount has been filed; or (ii) that is the subject of an objection or request for estimation Filed by any of the Debtors or the Liquidating Trustee or any other party-in-interest in accordance with applicable law and which objection or request has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court.

1.33    ***Distribution*** means Cash (§ 1.15), property, interests in property or other value distributed to holders of Allowed Claims (§ 1.5), or their designated agents, under this Plan.

1.34    ***Effective Date*** means the first Business Day (§ 1.13) after the Plan Confirmation Date (§ 1.57) on which the conditions precedent specified herein have been either satisfied or waived.

1.35    ***Entity*** means an entity as defined in section 101(15) of the Bankruptcy Code.

1.36    ***Estate*** means the estate created in each Debtor's Chapter 11 Case containing all property and other interests of the applicable Debtor pursuant to Bankruptcy Code section 541.

1.37    ***Exculpated Parties*** means (a) the Debtors, (b) the Indemnified Parties (§ 1.43), and (c) with respect to the persons named in (a)-(b) above, such Person's managers, directors, officers, shareholders, partners, members, employees, agents, authorized signatories, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors, and assignees, attorneys, financial advisors, investment bankers, accountants and other professionals or representatives, in each case in their capacity as such.

1.38    ***Final DIP Order*** means that certain *Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (I) Use Cash Collateral of the Prepetition Secured Parties, (II) Obtain Secured Superpriority Postpetition Financing and (III) Provide Adequate Protection to the Prepetition Secured Parties* [D.I. 86], as amended, supplemented or otherwise modified from time to time.

1.39    ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not, by itself, cause such order to not be a Final Order.

1.40    ***General Unsecured Claim*** means any Claim asserted against any Debtor which is not included within any other specifically defined Class hereunder or which is otherwise determined by the Bankruptcy Court to be a general unsecured claim.

1.41    ***Holdco*** means SPH Holdco LLC.

1.42    ***Impaired*** means, with respect to a Claim, Interest, or Class of Claims or Interests, that such Claim, Interest, or Class is impaired within the meaning of Bankruptcy Code section 1124.

1.43    ***Indemnified Parties*** means (a) the members of the Debtors' boards of directors or boards of managers, as applicable, as of the Petition Date, as well as any additional directors or members of a board of managers (if any) appointed from the Petition Date through the Effective Date; (b) the Debtors' officers or authorized signatories as of the Petition Date, as well as any additional officers or authorized signatories (if any) appointed from the Petition Date through the Effective Date; and (c) the Debtors' employees, attorneys, accountants, investment bankers, financial and other advisors, in each case in their capacity as such.

1.44    ***Interest*** means the interest of any holder of an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor, in each case in their capacities as such.

1.45    ***Interim Compensation Order*** means that certain *Final Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 137].

1.46    ***Liquidating Trust*** means the liquidating trust established on the Effective Date pursuant to Section 6.6 hereof and the Liquidating Trust Agreement.

1.47    ***Liquidating Trust Agreement*** means the agreement establishing the Liquidating Trust that may be created pursuant to this Plan, dated as of the Effective Date and to be filed as part of the Plan Supplement to the extent created.

1.48    ***Liquidating Trust Beneficiaries*** means, collectively, all creditors who are entitled to receive a distribution under this Plan. For the avoidance of doubt, the holders of Class 3 Secured Lender Claim are entitled to the proceeds of any refund, rebate, abatement or other recovery of the Arizona Tax Refund Claim pursuant to the terms and conditions of the Asset Purchase and Sale Agreement.

1.49    ***Liquidating Trustee*** means the disinterested Person appointed by the Debtors pursuant to Section 6.6 hereof to act as trustee of and administrator of the Liquidating Trust and any successor to such Person.

1.50    ***Lien*** means a lien as defined in section 101(37) of the Bankruptcy Code.

1.51    ***MCT*** means the Maricopa County Treasurer.

1.52    ***Other Priority Claim*** means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim, or Priority Tax Claim.

1.53    ***Other Secured Claim*** means any Secured Claim other than a Secured Lender Claim against any of the Debtors.

1.54    ***Person*** means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof, or any other Entity.

1.55    ***Petition Date*** means the date upon which each respective Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing their respective Chapter 11 Cases, which was February 11, 2016.

1.56    ***Plan*** means this joint plan under Chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, including, without limitation, all exhibits and schedules hereto.

1.57    ***Plan Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the docket of the Chapter 11 Cases.

1.58    ***Plan Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider approval of this Plan, as such hearing may be adjourned or continued from time to time.

1.59    ***Plan Confirmation Order*** means any order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

1.60    ***Plan Documents*** means all documents, forms of documents, schedules, and exhibits to this Plan to be executed, delivered, assumed, and/or performed in conjunction with consummation of this Plan on the Effective Date.

1.61    ***Plan Expenses*** means all actual and necessary fees, costs, expenses and obligations incurred by the Debtors, the Liquidating Trustee, and their respective agents, employees, attorneys, advisors and other professionals in administering this Plan, including, without limitation, (a) reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Debtors, the Liquidating Trustee, and their respective agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, and (b) all fees payable pursuant to Section 13.1 of this Plan; provided, however, that all Plan Expenses (except for statutory fees to be paid to the United States Trustee under section 1930 of Title 28 of the United States Code) shall not be greater than the amounts set forth for each such agent, employee, attorney, advisor or other professional set forth in the relevant line item in the Wind-Down Budget.

1.62    ***Plan Supplement*** means the compilation of all Plan Documents to be entered into as of the Effective Date, forms of which will be filed with the Bankruptcy Court not later than ten (10) days prior to the Plan Confirmation Hearing.

1.63    ***Plan Transactions*** shall have the meaning ascribed to it in Section 6.3 hereof.

1.64    ***Prepetition Secured Parties*** means CLMG Corp. and Beal Bank USA, as successor administrative agent and lender, respectively, under that certain Credit Agreement, dated as of July 23, 2012 (as amended from time to time), with Sundevil, as borrower.

1.65    ***Priority Tax Claim*** means any Allowed Claim of a governmental unit pursuant to Bankruptcy Code sections 502(i) and 507(a)(8); provided, however, that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims, except to the extent such penalty falls under section 507(a)(8)(G) of the Bankruptcy Code.

1.66    ***Professional*** means any professional firm or professional Person retained by the Debtors in connection with these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

1.67    ***Professional Fee Order*** means the *Order Appointing Fee Examiner and Establishing Related Procedures for the Review of Fee Applications of Retained Professionals* [D.I. 200].

1.68    ***Proof of Claim or Proof of Interest*** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim or Interest, as applicable, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of this Plan, the Bankruptcy Code, other Bankruptcy Rules, and any orders of the Bankruptcy Court.

1.69    ***Released Parties*** means (a) the Debtors, (b) the Prepetition Secured Parties, (c) the Secured Lenders, (d) the DIP Lenders, (e) the DIP Agent, (f) Wayzata Investment Partners LLC, Wayzata Opportunities Fund, LLC and Wayzata Opportunities Fund II LLC, (g) the Indemnified Parties (§ 1.43), (h) with respect to the persons named in (a)-(f) above, such Person's managers, directors, officers, shareholders, partners, members, employees, agents, authorized signatories, Affiliates, parents, subsidiaries, predecessors, successors, heirs, executors, and assignees, attorneys, financial advisors, investment bankers, accountants and other professionals or representatives, in each case in their capacity as such.

1.70    ***Releasing Parties*** means, collectively, (a) the Debtors' officers and directors as of the Petition Date, (b) the Prepetition Secured Parties, (c) the Secured Lenders, (d) the DIP Lenders, (e) the DIP Agent and (f) each holder of a Claim against the Debtors who accepts or is deemed to accept the Plan, in each case in their capacity as such.

1.71    ***Rejection Damages Claim*** means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code by any of the Debtors, as may be limited by sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, as applicable.

1.72    ***Remaining Assets*** means all Assets (§ 1.8) not conveyed under the Asset Purchase and Sale Agreement (§ 1.7), including, among other things, the Arizona Tax Refund Claim (§ 1.6).

1.73    ***Sale*** means the sale of the Transferred Assets in these Chapter 11 Cases pursuant to the terms and conditions of the Asset Purchase and Sale Agreement.

1.74    ***Sale Order*** means the *Order (I) Authorizing and Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, Claims, Liens, and Other Interests to the Buyer (II) Approving Assumption and Assignment of the Assigned Contracts; (III) Determining Cure Amounts; and (IV) Granting Related Relief* [D.I. 291].

1.75    ***Schedules*** means, collectively, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the

Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Plan Confirmation Date.

1.76   **Secured Claim** means a Claim (i) secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any rights of setoff of the holder thereof under Bankruptcy Code section 553.

1.77   **Secured Lender Claim** means the total Claim of the Secured Lenders, as set forth in the Proofs of Claim Nos. 8, 9, 10 and 11 filed by and on behalf of the Secured Lenders and in the Final DIP Order (§ 1.37), which is in the amount of not less than $234,115,321.55 as of the Petition Date, plus subsequently accruing interest and subsequently incurred fees, expenses and other contractual liabilities, less amounts subsequently paid.

1.78   **Secured Lender Cash Collateral** means all Cash Collateral as defined in the Final DIP Order (§ 1.37).

1.79   **Secured Lender Other Collateral** means all Collateral of the Secured Lenders, other than Secured Lender Cash Collateral, existing as of the Petition Date or granted pursuant to the Final DIP Order (§ 1.37).

1.80   **Secured Lenders** means the Buyers, as the transferees of the Prepetition Secured Parties.

1.81   **Secured Tax Claim** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.82   **Sundevil** means Sundevil Power Holdings, LLC.

1.83   **Taxes** means (i) all sales, use or transaction privilege taxes, real or personal property taxes, recordation and transfer taxes, payroll reduction taxes, franchise taxes, value added, occupation, excise, severance, windfall profits, escheat, stamp, license, payroll, social security, withholding and other taxes, taxes on gross or net income or other monetary obligations imposed, assessed or exacted by any governmental unit, including any payments in lieu of taxes, and (ii) any interest, penalties, adjustments and additions attributable to any of the foregoing, including any liability for any of the foregoing taxes or other items arising as a transferee, successor, member of a combined, consolidated, unitary or affiliated group, or by contract or otherwise.

1.84   **Transferred Assets** means the Assets that were sold, transferred, assigned, conveyed, and delivered to the Buyers pursuant to the Sale Order and in accordance with the terms and subject to the conditions of the Asset Purchase and Sale Agreement.   For the avoidance of doubt, pursuant to the terms and conditions of the Asset Purchase and

Sale Agreement, Transferred Assets includes the rights to the proceeds of any refund, rebate, abatement or other recovery of the Arizona Tax Refund Claim.

1.85    *Unimpaired* means, with respect to a Claim or Class of Claims, that such Claim or Class is not Impaired (§ 1.42).

1.86    *Voting Agent* means Garden City Group, LLC.

1.87    *Voting Record Date* means the date established by the Bankruptcy Court for determining the current holders of Claims and Interests.

1.88    *Wind-Down Amount* means the total amount of Cash, including Cash in retainers established in accounts with Debtors' Professionals, necessary to pay in full outstanding Allowed Administrative Expense Claims, Accrued Professional Compensation Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, as well as the Plan Expenses (including fees to be paid to the United States Trustee) necessary to conclude the Chapter 11 Cases as set forth in and subject to the Wind-Down Budget (except for fees to be paid to the United States Trustee, which shall not be subject to any budget); underlined provided that, to the extent any excess Cash from the Wind-Down Budget remains after the conclusion of the Chapter 11 Cases, such excess Cash shall be transferred to the Secured Lenders under Section 4.3 of the Plan.

1.89    *Wind-Down Budget* means the budget attached as Annex 2 to the Sale Order (and for ease of reference, attached as Exhibit A to this Plan), as may be supplemented or amended after the date hereof by prior written agreement of the Debtors and the Secured Lenders.

**B.    Interpretation: Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Defined terms referenced herein shall, where convenience warrants, have citations to the relevant Definition section styled as "(§ 1.___)."

## SECTION 2   ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

### 2.1   Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees with the Debtors to less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date or otherwise, each holder of an Allowed Administrative Expense Claim, to the extent such obligations have not been assumed by one or both of the Buyers (§ 1.14) pursuant to the Asset Purchase and Sale Agreement and the Sale Order, will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash, from the Wind-Down Amount (§ 1.88) as set forth in and subject to the Wind Down Budget (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, (c) at such time and upon such terms as may be agreed upon by such holder and the Debtors, or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, in accordance with the Wind-Down Budget and to the extent such obligations have not been assumed by one or both of the Buyers (§ 1.14) pursuant to the Asset Purchase and Sale Agreement and the Sale Order, shall be paid by the Debtors, as applicable, in the ordinary course of business, including post-petition tax claims, consistent with practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  For the avoidance of doubt, certain Administrative Expense Claims have been assumed by the Buyers pursuant to the Asset Purchase and Sale Agreement and Sale Order and, therefore, do not constitute obligations of the Debtors and the holders of such Claims shall have recourse only to the Buyers.

### 2.2   Bar Date for Administrative Expense Claims Other than Professional Compensation Claims.

Any holder of an Administrative Expense Claim, other than (i) an Accrued Professional Compensation Claim (§ 1.1), (ii) an expense or liability incurred but not yet due and payable in the ordinary course of business by a Debtor until after the thirtieth (30th) day after the Effective Date, (iii) an Administrative Expense Claim that has been Allowed or paid in full on or before the Effective Date, (iv) fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon, or (v) a Claim for taxes arising on or after the Petition Date, must file with the Bankruptcy Court and serve on the Debtors, and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim so as to be received on or before the Administrative Expense Claim Bar Date (§ 1.3).  Failure to file and serve such request for payment timely and properly shall result in the Administrative Expense Claim being forever barred, absent order of the Bankruptcy Court to the contrary.  The notice of the Effective Date shall include the Administrative Expense Claim Bar Date and such notice shall be served on all known administrative claimants.

Notwithstanding any provision in the Plan regarding payment of Administrative Expense Claims to the contrary, and without waiver of any argument available that such Claim is already time-barred by prior orders of the Bankruptcy Court, absent order of the Bankruptcy Court to the contrary, all Administrative Expense Claims required to be filed and not filed by the Administrative Expense Claim Bar Date shall be deemed disallowed, shall be unenforceable against the Debtors and the Liquidating Trust, and shall not be entitled to any Distribution under this Plan.  Without limiting the foregoing, all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date.

### 2.3   Accrued Professional Compensation Claims.

### 2.3.1   Final Fee Applications.

All final requests for payment of Accrued Professional Compensation Claims shall be filed no later than 45 days after the Effective Date, in the manner set forth in the Interim Compensation Order and the Professional Fee Order.  After notice and a hearing in accordance with the Interim Compensation Order and Professional Fee Order, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court and paid in accordance with the applicable order of the Bankruptcy Court.

### 2.3.2   Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, SND Wind Down or the Liquidating Trustee, as applicable, shall pay Professionals and other Entities reasonable fees and expenses for any work performed in the ordinary course of business without any further notice.

### 2.4   Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees with the Debtors to a different treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, Cash in an amount equal to such Allowed Priority Tax Claim together with interest accrued thereon at the applicable non-bankruptcy rate, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Priority Tax Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors and the holder of the Allowed Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.  Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims, except as provided in section 507(a)(8)(G) of the Bankruptcy Code.  Upon payment in full of any Allowed Priority Tax Claim, any Liens securing such Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  The Debtors estimate that there are no outstanding Allowed Priority Tax Claims that will be paid in accordance with this Plan.

## SECTION 3   CLASSIFICATION OF CLAIMS AND INTERESTS

A.      The following table designates the Classes of Claims against and Interests in the Debtors' Estates, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan.  A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Claim | Treatment | Voting Rights |
|-------|-------|-----------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Lender Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Deemed to Reject |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Sundevil | Impaired | Deemed to Reject |
| 8 | Equity Interests in Holdco | Impaired | Deemed to Reject |

## SECTION 4   TREATMENT OF CLAIMS AND INTERESTS

The treatment and voting rights provided to each Class for distribution purposes is specified below:

### 4.1   Class 1—Other Priority Claims.

(a)      *Classification*:  Class 1 consists of all Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim has agreed with the Debtors to less favorable treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors and the holder of the Allowed Other Priority Claim.

The Debtors do not anticipate that there will be any Allowed Other Priority Claims.

(c)    *Voting*: Class 1 is Unimpaired, and holders of Class 1 Other Priority Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2    Class 2—Secured Tax Claims.**

(a)    *Classification*: Class 2 consists of all Secured Tax Claims.

(b)    *Treatment*: Except to the extent that any Allowed Secured Tax Claim has been paid in full on or prior to the Effective Date or assumed by the Buyers under the Asset Purchase and Sale Agreement and the Sale Order, each holder of an Allowed Secured Tax Claim shall receive on account of such Claim, in accordance with section 1129(a)(9)(D) of the Bankruptcy Code, Cash in an amount equal to such Allowed Secured Tax Claim together with interest accrued thereon at the applicable non-bankruptcy rate, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Secured Tax Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors and the holder of the Allowed Secured Tax Claim, underlined provided that the Debtors and, following the Effective Date, the Liquidating Trustee, shall retain and shall be entitled to enforce any setoff and recoupment rights relating to any tax refund claim. All Allowed Secured Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Secured Tax Claims, except as provided in section 507(a)(8)(G) of the Bankruptcy Code.

The Secured Tax Claim of MCT for tax year 2016 and subsequent years have been assumed by the Buyers under the Asset Purchase and Sale Agreement and the Sale Order and is therefore not entitled to a Distribution under the Plan. Accordingly, the Debtors do not anticipate that there will be any Allowed Secured Tax Claims.

(c)    *Voting*: Class 2 is Unimpaired, and holders of Class 2 Secured Tax Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 2 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

**4.3    Class 3—Secured Lender Claim.**

(a)    *Classification*:  Class 3 consists of the Secured Lender Claim.

(b)    *Allowance*: The Secured Lender Claim shall be deemed Allowed.

(c)    *Treatment*:  The holders of the Secured Lender Claim (§ 1.77), and the DIP Lenders (§ 1.28), subject to the terms of the Asset Purchase and Sale Agreement (§ 1.7), have (i) credit bid in an amount equal to their entire DIP Claim (§ 1.27) (including the funding by Buyers or one of its Affiliates of the full amount of the Wind-Down Amount (§ 1.88) (less the amount of Cash in retainers established in accounts with the Debtor's Professionals)) plus a portion of their prepetition Secured Lender Claim equal to the Secured Lender Claim less the Wind-Down Amount for substantially all of the Debtors' property and assets, including (among other things) the proceeds of the Arizona Tax Refund Claim, (ii) paid the Cure Costs under (and as defined in) the Asset Purchase and Sale Agreement and (iii) assumed the Assumed Liabilities under (and as defined in) the Asset Purchase and Sale Agreement.

In full and final satisfaction of the remaining Secured Lender Claim, the holders of the Secured Lender Claim shall receive any excess cash from the Wind-Down Amount (§ 1.88) remaining as soon as practicable after the payment in full of all Allowed Administrative Expense Claims, all Allowed Accrued Professional Compensation Claims, all Allowed Priority Tax Claims, and all Allowed Other Priority Claims and Plan Expenses (each as set forth in and in accordance with the Wind Down Budget) to be paid under this Plan, including any amounts due to the Office of the United States Trustee.

(d)    *Voting*:  Class 3 is Impaired.   Therefore, holders of Allowed Class 3 Secured Lender Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

**4.4    Class 4—Other Secured Claims.**

(a)    *Classification*:  Class 4 consists of all Other Secured Claims.  Each Other Secured Claim shall be considered to be in its own separate subclass based on the unique interest in property (or setoff right) securing such Claim.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Other Secured Claim has agreed with the Debtors to less favorable treatment, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date,

in full and final satisfaction of each Allowed Other Secured Claim, each such holder, at the option of the Debtors, shall (i) be paid in full in Cash (without interest), (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.

On the Effective Date, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, as set forth in Section 11.9.

The Debtors specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.  If an Allowed Other Secured Claim exceeds the value of the collateral that secures such Allowed Other Secured Claim, the holder of such Allowed Other Secured Claim will have a General Unsecured Claim for the deficiency.

As of the Petition Date, Squire Patton Boggs (US) LLP ("*Squire*") held an Allowed Other Secured Claim (§ 1.76) in the amount of $50,373.20 for legal services rendered prior to the Petition Date in connection with Squire's representation of the Debtors in the litigation of the Arizona Tax Refund Claim (§ 1.6), which resulted in entry of a judgment in favor of Sundevil. Squire may assert an attorney's charging lien against said judgment with respect to the aforementioned prepetition fee claim. On the Effective Date, pursuant to Squire's agreement to accept such treatment (which such acceptance shall be evidenced by its accepting vote in favor of the Plan), Squire shall be paid the principal amount of its claim in cash by the Debtors, exclusive of interest or late charges, in full and final satisfaction, settlement, and release of its Claim, from the Wind Down Amount.

(c)     *Voting:*    Class 4 is Impaired. Therefore, holders of Allowed Class 4 Other Secured Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

4.5   **Class 5—General Unsecured Claims.**

    (a)   *Classification*:   Class 5 consists of General Unsecured Claims (§ 1.40 )

    (b)   *Treatment:*  Holders of General Unsecured Claims shall receive no distribution on account of such General Unsecured Claims.

    (c)   *Voting:*  Class 5 is Impaired, and holders of General Unsecured Claims are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore holders of Class 5 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

4.6   **Class 6—Intercompany Claims.**

    (a)   *Classification*:   Class 6 consists of all Intercompany Claims between the Debtors.

    (b)   *Treatment:*   On the Effective Date all Intercompany Claims between the Debtors will be cancelled and compromised, and holders of Intercompany Claims shall receive no distribution on account of such Intercompany Claims.

    (c)   *Voting:*  Pursuant to section 1126(g) of the Bankruptcy Code, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

4.7   **Class 7—Equity Interests in Sundevil.**

    (a)   *Classification*:  Class 7 consists of all Equity Interests in Sundevil.

    (b)   *Treatment:*  On the Effective Date, all Equity Interests in Sundevil will be cancelled and extinguished, and holders of Equity Interests in Sundevil shall receive no distribution on account of such Interests.

    (c)   *Voting:*  Class 7 is Impaired, and holders of Equity Interests in Sundevil are conclusively presumed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 7 Equity Interests in Sundevil are not entitled to vote to accept or reject the Plan.

4.8   **Class 8—Equity Interests in Holdco.**

    (a)   *Classification*:  Class 6 consists of all Equity Interests in Holdco.

(b)    *Treatment:*  On the Effective Date all Equity Interests in Holdco will be cancelled and extinguished, and holders of Equity Interests in Holdco shall receive no distribution on account of such Equity Interests.

(c)    *Voting:*  Class 8 is Impaired, and holders of Equity Interests in Holdco are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 8 Equity Interests in Holdco are not entitled to vote to accept or reject the Plan.

## SECTION 5   ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1   Impaired Classes.

Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that may receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan.  Each holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject this Plan.

Classes 5, 6, 7, and 8 are not entitled to receive or retain any Distributions or property under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 3 and 4 are Impaired and are the only Classes of Claims or Interests entitled to vote on this Plan.

### 5.2   Acceptance by a Class.

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan.  Classes 1 and 2 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 5.3   Claims and Interests Not Entitled to Vote.

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed, (b) is the subject of a pending objection, or (c) (i) was not listed on the Debtors' Schedules or was listed on the Debtors' Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed as unliquidated or contingent, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise.  However, if a Claim is disallowed only in part, the holder shall be entitled to vote the portion of the Claim that was not disallowed.

## SECTION 6   MEANS FOR IMPLEMENTATION

### 6.1    Cancelation of Existing Securities and Agreements

On the Effective Date, all agreements and other documents evidencing (i) any Claim or rights of any holder of a Claim against the Debtors, including any notes evidencing such Claims, or (ii) any Interest in the Debtors, shall be canceled.  The holders of, or parties to, such canceled agreements and documents shall have no rights arising from or relating to such agreements and documents or the cancelation thereof, except any rights provided pursuant to this Plan.

### 6.2    Closing of Holdco Case and Dissolution of Holdco.

The Confirmation Order shall include provisions constituting a final decree and order to close Holdco's Chapter 11 Case, and upon the Effective Date, (i) Holdco's Chapter 11 Case shall be closed; (ii) Holdco shall be deemed immediately and judicially dissolved, with no further existence, residual or otherwise, notwithstanding any provisions of Title 18 of the Delaware Code; and (iii) any and all recourse for any Claims, Interests, or equitable relief with respect to Holdco shall proceed exclusively in accordance with the Plan and the Final Orders entered in Holdco's Chapter 11 Case.

### 6.3    Plan Transactions.

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan (such transactions, collectively, the "*Plan Transactions*"), including, but not limited to, (i) the execution and delivery of appropriate agreements or other documents of financing, merger, consolidation, restructuring, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law, (ii) the execution and delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, duty or obligation on terms consistent with this Plan, (iii) the filing of appropriate certificates of incorporation or other similar documents with the appropriate governmental authorities pursuant to applicable law, and (iv) any and all other actions that the Debtors determine are necessary or appropriate to effect the Plan Transactions.

On or upon the occurrence of the Effective Date, (i) the Debtors may, in accordance with this Plan, execute the Liquidating Trust Agreement and cause the Remaining Assets (§ 1.72) to be transferred to the Liquidating Trust, free and clear of all Liens, Claims, charges, or other encumbrances, except as otherwise provided in the Plan; and (ii) the Liquidating Trust, if created, shall assume all obligations of the Debtors under this Plan.

### 6.4    Effectuating Documents and Further Transactions.

Upon entry of the Plan Confirmation Order, the Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any Plan Transactions.  The Debtors, all

holders of Claims receiving Distributions pursuant to this Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 6.5    Authority to Act.

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the managers or members of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to applicable Delaware law, without any further vote, consent, approval, authorization, or other action by such managers or members of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### 6.6    Liquidating Trust.

#### 6.6.1    Establishment of Liquidating Trust.

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, the form of which will be filed with the Bankruptcy Court prior to the Plan Confirmation Hearing as part of the Plan Supplement.  Upon establishment of the Liquidating Trust, all Remaining Assets (§ 1.72) shall be deemed transferred to the Liquidating Trust without any further action of any of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

#### 6.6.2    Transfer of Trust Assets.

Pursuant to Bankruptcy Code section 1141, all transfers and contributions made pursuant to this Section 6 shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in this Plan.  Upon completion of the transfer of the Remaining Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust's beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of this Plan, as a transfer to the Liquidating Trust's beneficiaries, followed by a transfer by such Liquidating Trust's beneficiaries to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners thereof.

#### 6.6.3    Purpose of Liquidating Trust.

The Liquidating Trust shall be established for the purpose of liquidating the Remaining Assets, to maximize recoveries for the benefit of the Liquidating Trust's beneficiaries, and making distributions in accordance with this Plan to the Liquidating Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust's beneficiaries treated as grantors and owners thereof.

### 6.6.4  Liquidating Trustee.

(i)      *Retention of Liquidating Trustee*.  The Liquidating Trustee will be a Person designated by the Debtors, in consultation and with the consent of the DIP Lenders and Secured Lenders, prior to the Plan Confirmation Hearing.  The Liquidating Trustee shall file with the Bankruptcy Court a declaration setting forth connections with creditors and parties in interest in the Debtors' Chapter 11 Cases.  Once appointed, the Liquidating Trustee shall act as the representative of the Estates for all purposes pursuant to Bankruptcy Code section 1123(b)(3), and in such capacity, the Liquidating Trustee may pursue, litigate, or compromise and settle any rights, Claims, or Causes of Action (§ 1.16) in accordance with the best interests of and for the benefit of the Liquidating Trust's beneficiaries.  In the event that the Liquidating Trustee resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trustee, then a successor shall be jointly appointed by the Secured Lenders.  Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of this Plan, the Plan Confirmation Order and the Liquidating Trust Agreement.

(ii)      *Responsibilities and Authority of the Liquidating Trustee.* The responsibilities and authority of the Liquidating Trustee shall include: (a) calculating and implementing all Distributions for the Liquidating Trust's beneficiaries; (b) administering (and, if applicable, paying) taxes, including, among other things, (i) filing of tax returns, and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the Liquidating Trust's beneficiaries of the status of the Liquidating Trust; (d) liquidating the Liquidating Trust Assets and providing distributions to the Liquidating Trust's beneficiaries in accordance with the provisions of this Plan; (e) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (f) distributing information statements as required for federal income tax and other applicable tax purposes; (g) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case of Sundevil; and (h) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan. In addition, after the Plan Confirmation Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the twentieth (20th) day of January, April, July, and October as appropriate, until the Chapter 11 Case of Sundevil is closed, converted, or dismissed, whichever happens earlier.

(iii)      *Powers of the Liquidating Trustee*.  The powers of the Liquidating Trustee to administer the Liquidating Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) the power to invest funds in, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with this Plan and Liquidating Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle any Causes of Action, if any, not precluded by the Releases effected

pursuant to this Plan, subject to prior approval of the Secured Lenders, and without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement, (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan.   Except as expressly set forth herein and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Liquidating Trustee Causes of Action as it determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decision, other than those decisions constituting gross negligence or willful misconduct, as set forth more fully in the Liquidating Trust Agreement.   The extent to which any Cause of Action is pursued shall be subject to review and approval by the Secured Lenders, in the reasonable exercise of the Secured Lenders' discretion. The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the assets of the Liquidating Trust to Cash.

(vi)     *Compensation of Liquidating Trustee.*   The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement and the Wind-Down Budget.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee shall not be required to file a fee application to receive compensation.

(vii)     *Retention and Payment of Professionals.*   The Liquidating Trustee, in consultation with the Secured Lenders, shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

(viii)     *Limitation on Liability and Indemnification of the Liquidating Trustee.*   The Liquidating Trustee and his professionals shall be entitled to indemnification and advancement from the Liquidating Trust against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or his professionals from liability for gross negligence or willful misconduct, as set forth more fully in the Liquidating Trust Agreement.

### 6.6.5   Plan Expenses.

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Plan Expenses from the Liquidating Trust, subject to the Wind-Down Budget, on 10 days' prior written notice to the Secured Lenders.

### 6.6.6    Termination of Liquidating Trust.

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of its assets to the Liquidating Trust's beneficiaries and (b) the third anniversary of the creation of the Liquidating Trust; provided that, if warranted by the facts and circumstances involved in resolving any Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding such extension is necessary for purposes of resolving such Causes of Action and distributing the proceeds to Liquidating Trust's beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified, finite term.   Notwithstanding the foregoing, the Liquidating Trust shall provide for automatic termination of the Liquidating Trust in the event that a final decree is entered closing each of the Chapter 11 Cases or if the Chapter 11 Cases are converted or dismissed, as more fully set forth in the Liquidating Trust Agreement.

### 6.6.7    Exculpation Relating to the Liquidating Trust.

No holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any Claim or cause of action against the Liquidating Trustee, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan and the Liquidating Trust Agreement or for fulfilling any functions incidental to implementing the provisions of this Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of gross negligence or willful misconduct, as set forth more fully in the Liquidating Trust Agreement.

### 6.7    Continued Prosecution of the Arizona Tax Refund Claim

Following the Effective Date, the Liquidating Trustee shall continue the prosecution of the Arizona Tax Refund Claim (§ 1.6) in accordance with the Asset Purchase and Sale Agreement, to the extent that the Arizona Tax Refund Claim has not been fully resolved by such time by Final Order in an appropriate Arizona tribunal or by a settlement with the taxing authority.  The Litigation Trustee shall remit any proceeds from the prosecution of the Arizona Tax Refund Claim, net of expenses of prosecution to the Buyers pursuant to the terms of the Asset Purchase and Sale Agreement and the Sale Order.

### 6.8    Wind-Down Amount

Following the Effective Date, the Liquidating Trustee will use the Wind-Down Amount for the purpose of administering and winding down these Chapter 11 Cases in accordance with the Wind Down Budget.  The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Plan Expenses in accordance with the Wind-Down Budget.   All Plan Expenses shall be charged against and paid from the Wind-Down Amount.  Upon satisfaction of all valid Plan Expenses and Allowed Administrative Expense Claims, Allowed Accrued Professional Compensation Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims (each in accordance with the Wind Down Budget) and entry by the Bankruptcy Court of a final decree closing Sundevil's Chapter 11 Case, any remaining balance of the Wind Down Amount shall be distributed by the Liquidating Trustee to the Secured Lenders in accordance with this Plan as soon as practicable thereafter.

### 6.9    Claims for Indemnification by the Indemnified Parties.

The Indemnified Parties shall each hold Allowed Claims for any and all rights and entitlements that the Indemnified Parties have or may have to indemnification, contribution, reimbursement or other payments, including damages, costs and expenses related thereto from the Debtors, including, without limitation, those arising in respect of or by reason of the fact that the Indemnified Parties served as managers or officers of the Debtors or their predecessors and served at the request of, or for the benefit of, the Debtors or their predecessors as managers or officers.   The Indemnified Parties shall also each hold Allowed Claims for the right to all benefits under certain director and officer insurance programs and other insurance policies to which the Indemnified Parties are entitled in their current or former capacities as mangers or officers of the Debtors or their predecessors.

Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations arising under any D&O Liability Insurance Policies.   In addition, after the Effective Date, Sundevil shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, and all managers and officers of the Debtors who served in such capacity as of the Petition Date and at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such managers and officers remain in such positions after the Effective Date.

### 6.10   Closing of Sundevil Case and Dissolution of Sundevil.

Upon motion and an opportunity for hearing, the Liquidating Trustee may move for a final decree closing the Chapter 11 Case of Sundevil when the actions contemplated by the Liquidating Trustee under the Plan have been substantially completed and the circumstances similarly warrant the termination and dissolution of the Liquidating Trust. In order to implement the finality of post-Effective Date administration contemplated and required by this Plan, the Liquidating Trustee is entitled to obtain an order having the following decrees: (i) a final decree closing the Chapter 11 Case of Sundevil; (ii) that Sundevil shall be deemed immediately and judicially dissolved, with no further existence, residual or otherwise, notwithstanding any provisions of Title 18 of the Delaware Code; and (iii) any and all recourse for any Claims, Interests or equitable relief with respect to Sundevil shall proceed exclusively in accordance with the Plan and the Final Orders entered in Sundevil's Chapter 11 Case.

## SECTION 7   DISTRIBUTIONS

### 7.1    [RESERVED]

### 7.2    Date of Distributions.

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.   Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date

on which such Claim becomes Allowed.  Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.3    Postpetition Interest on Claims.

Except as may be otherwise expressly provided herein, including in Section 2.4 hereof, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no holder of any such Claim against the Debtors shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

### 7.4    Disbursements by the Liquidating Trustee.

All Distributions hereunder shall be made by the Liquidating Trustee, on or after the Effective Date or as otherwise provided herein.  The Liquidating Trustee may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (ii) make all Distributions contemplated hereby, and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### 7.5    Delivery of Distributions.

Subject to applicable Bankruptcy Rules, all Distributions to holders of Allowed Claims shall be made by the Disbursing Agent who shall transmit such Distributions to the applicable holders of Allowed Claims or their designees.

### 7.6    Unclaimed Distributions.

If any Distribution to a holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such holder, and no Distribution to such holder shall be made unless and until the Disbursing Agent is notified by the holder of the current address of such holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the Distribution, and such unclaimed property shall be transferred to the official of such state or other jurisdiction authorized by applicable law to receive the proceeds of such distribution.  The proceeds of such distribution shall thereafter be held solely for the benefit of and for ultimate distribution to such holder as the sole equitable owner thereof and shall be treated as abandoned property and escheat to the applicable state or other jurisdiction in accordance with applicable law.  In no event shall the proceeds of any such distribution revert to or become the property of either Debtor or the Liquidating Trust.

### 7.7   Manner of Payment.

Any distributions to be made by or on behalf of the Debtors pursuant to this Plan shall be made by checks drawn on accounts maintained by Sundevil, or by wire transfer if circumstances justify, at the option of the Debtors (if prior to the Effective Date) or the Liquidating Trustee (if on or after the Effective Date).

### 7.8   Setoffs.

The Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court and upon no less than ten (10) days' written notice to the applicable holder of a Claim, or as may be agreed to by the holder of a Claim, may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account of such Allowed Claim (before any Distribution is to be made on account of such Allowed Claim), any claims of any nature whatsoever that the Debtors may have against the holder of such Allowed Claim, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim.

### 7.9   Minimum Distributions.

No payment of Cash in an amount of less than $50.00 shall be required to be made on account of any Allowed Claim.  Such undistributed amount may instead be used in accordance with the Plan.  If the Cash available for the final Distribution is less than $15,000, and the Liquidating Trustee, in its sole discretion, determines that it would cost more than $5,000 to distribute such funds, the Liquidating Trustee may donate such funds to the charity of its choice, in consultation with the Secured Lenders, provided such charity is unrelated to the Debtors, the Liquidating Trustee, the Secured Lenders, and Debtors' equity interest holders.

### 7.10   Allocation of Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.11   Distributions Free and Clear.

Except as otherwise provided in this Plan, any Distribution or transfer made under this Plan, including, without limitation, Distributions to any holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other Entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 8   PROCEDURES FOR DISPUTED CLAIMS

### 8.1   Allowance of Claims.

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Plan Confirmation Order, no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Plan Confirmation Order, in the Chapter 11 Cases allowing such Claim.   Upon the Effective Date, the Liquidating Trustee shall be vested with any and all rights and defenses each Debtor had with respect to any Claim immediately prior to the Effective Date.

### 8.2   Objections to Claims.

Sundevil and the Liquidating Trustee shall be entitled to file objections to all Claims that are otherwise not deemed Allowed Claims under this Plan or otherwise.   Any objections to Claims shall be served and filed on or before the later of (i) sixty (60) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court, upon motion filed by the Liquidating Trustee and served on all affected claimants, after reasonable notice and opportunity to object.

### 8.3   Estimation of Claims.

Prior to the Effective Date, the Debtors, or following the Effective Date, the Liquidating Trustee, may (but is not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.   In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim.

### 8.4   Distributions Relating to Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's *pro rata* share of the property distributable with respect to the Class in which such Claim belongs.   To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the holders of Allowed Claims in the same Class.

### 8.5    Distributions after Allowance.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the holder of such Claim the Distribution to which such holder is entitled hereunder.

### 8.6    Preservations of Rights to Settle Claims.

Except as otherwise expressly provided herein, including in Sections 6.6 and 11.6 of this Plan (Releases), nothing contained in this Plan, the Plan Documents, or in the Plan Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their members, managers, officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates.  This Section shall not apply to any claims released, waived, relinquished, exculpated, compromised, or settled under this Plan or pursuant to a Final Order, expressly including the Sale Order.  Except as expressly provided in this Plan, nothing contained in this Plan, the Plan Documents, or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense.  No Entity may rely on the absence of a specific reference in this Plan, or the Disclosure Statement, to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against them.  The Debtors, for the benefit of their Estates and, upon the Effective Date, the Liquidating Trustee, expressly reserve all rights to prosecute any and all causes of action against any Person, except as otherwise expressly provided in this Plan.

### 8.7    Disallowed Claims.

All Claims held by Persons or Entities against whom or which either Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject this Plan.  Claims deemed disallowed pursuant to this Section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums or property due to the Debtors from such party have been paid.

## SECTION 9   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1   General Treatment.

All executory contracts and unexpired leases to which either of the Debtors are parties are hereby rejected as of the Effective Date, except for any executory contract or unexpired lease that (i) previously has been assumed pursuant to Final Order (§ 1.39) of the Bankruptcy Court (including the Sale Order), (ii) is specifically designated as an executory contract or unexpired lease to be assumed in this Plan, or (iii) is the subject of a separate assumption motion filed by the Debtors under section 365 of the Bankruptcy Code prior to the Effective Date.

### 9.2   Rejection Damages Claims.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to this Plan results in a Rejection Damages Claim (§ 1.71) in favor of a counterparty to such executory contract or unexpired lease, absent an order of the Bankruptcy Court to the contrary, such Rejection Damages Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after service of notice of the Effective Date, which notice shall expressly state that all executory contracts and unexpired leases are rejected as of the Effective Date, except for those that (i) previously have been assumed pursuant to a Final Order of the Bankruptcy Court (including the Sale Order), (ii) are specifically designated to be assumed in the Plan, or (iii) are the subject of a separate assumption motion filed by the Debtors prior to the Effective Date.  Such notice shall further set forth the last date to file a Rejection Damages Claim.  All Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to the terms of this Plan; provided, however, that all non-debtor counterparties to an executory contract or unexpired lease rejected hereby may retain the proceeds of any cash or other deposit or letter of credit posted as security for their respective Claim, up to the Allowed amount of such Claim.

### 9.3   Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease in this Plan or the Schedules, nor anything contained in this Plan or the Schedules, shall constitute an admission by the Debtors that such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease; provided that, notwithstanding anything to the contrary herein, any such dispute shall be resolved prior to the Plan Confirmation Date.

# SECTION 10 CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 10.1  Conditions Precedent.

The occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

(a)     Holdco shall have transferred all of its existing Cash to Sundevil;

(b)     the Bankruptcy Court shall have entered the Sale Order, and the transactions described in the Sale Order shall have been effectuated;

(c)     Sundevil shall be in possession of and shall retain the Wind-Down Amount (§ 1.88);

(d)     the Plan shall have been confirmed by the Bankruptcy Court (which condition may not be waived);

(e)     the Plan Confirmation Order (§ 1.59) shall have been in form and substance satisfactory to the Debtor and the Secured Lenders;

(f)     all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement any Plan Transactions, shall have been effected or executed;

(g)     the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions; and

(h)     there shall have been no modification or stay of the Plan Confirmation Order or entry of other court order prohibiting any Plan Transactions.

### 10.2  Waiver of Conditions.

Unless otherwise specifically provided in this Plan, the conditions set forth in Section 10.1 of this Plan may be waived in whole or in part by the Debtors, in consultation with the Secured Lenders, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 10.3  Effect of Failure of Conditions.

If the conditions precedent specified in Section 10.1 hereof have not been satisfied or waived by the Debtors within sixty (60) days after the Plan Confirmation Date, which period may be extended by the Debtors in consultation with the Secured Lenders, then (i) the Plan Confirmation Order shall be vacated, (ii) no Distributions under this Plan shall be made, (iii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date, as though the Plan Confirmation Date had never occurred, and (iv) all of the Debtors' obligations with respect to Claims and Interests

shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against, or equity interests in, the Debtors or any other Entity, or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors or otherwise.

## SECTION 11 EFFECT OF CONFIRMATION

### 11.1  Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Secured Lenders, the DIP Lenders, the Buyers, and all present and former holders of Claims against and Interests in any Debtor, regardless of whether any such holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan and regardless of whether any such holder of a Claim or Interest is entitled to receive any Distribution under this Plan.

### 11.2  [RESERVED]

### 11.3  Compromise and Settlement of Claims and Controversies.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal, and subordination rights that a holder of an Allowed Claim receiving a distribution under this Plan may have with respect to such Allowed Claim, or any distribution to be made on account of such Allowed Claim.  The entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement set forth in the Plan of all Claims and controversies of holders of Allowed Claims receiving distributions under this Plan, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of such Claims is fair, equitable, and reasonable.  After the Effective Date, the Debtors may, and shall have the exclusive right to, compromise and settle any Claims and any Causes of Action against any other Person or Entity without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtors as of the Effective Date.

### 11.4  Injunction.

Except as otherwise expressly provided in this Plan, the Plan Confirmation Order, or a separate order of the Bankruptcy Court, on and after the Effective Date, all Persons and Entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined from, on account of such Claims and Interests: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against any property to be distributed under the Plan,; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any property to be distributed  under the Plan on account of any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the property to be distributed under the Plan on account of any such Claim or Interest; (d) asserting any right

of setoff (except to the extent such setoff was exercised prior to the Petition Date) or subrogation of any kind against any obligation due from the Debtors with respect to any property to be distributed under the Plan on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action which are to be transferred to the Liquidating Trust. The benefit of such injunction shall extend to successors of the Debtors, including the Liquidating Trust.

Except as otherwise expressly provided in this Plan, the Plan Confirmation Order, or a separate order of the Bankruptcy Court, on and after the Effective Date, all Persons and Entities who have held, hold or may hold Claims or Interests that have been released or exculpated pursuant to this Plan (the "***Released Claims***") are permanently enjoined from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claims; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order on account of any such Released Claims; (c) creating, perfecting or enforcing any encumbrance of any kind on account of any such Released Claims; and (d) asserting any right of setoff (except to the extent such setoff was exercised prior to the Petition Date) or subrogation of any kind against any obligation due from the Debtors on account of any such Released Claim.

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtors and their respective affiliates, employees, advisors, officers and directors, or agents' implementation or consummation of this Plan.

For the avoidance of doubt, nothing in this Section 11.4 shall enjoin or prohibit (i) the holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan or (ii) the interpretation or enforcement by any party in interest of any of the obligations of the Debtors, the Liquidating Trustee, or the Liquidating Trust under this Plan.

### 11.5  Term of Injunctions or Stays.

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan, (a) all injunctions with respect to or stays against an action against property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the Plan Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtors' Estates, and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.

### 11.6  Debtor and Estate Releases.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Released Parties (§ 1.69) are deemed released by the Debtors and the Estates, on behalf of themselves and any successor or Estate representative (including, but not limited to, the Liquidating Trustee), from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a Debtor or its Estate, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Liquidating Trustee or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or any other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the businesses of the Debtors, the Chapter 11 Cases, the negotiation, documentation, and consummation of the Sale, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the release or satisfaction of any mortgage, lien or security interest, the distribution of proceeds, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the restructuring of Claims and Equity Interests prior to or during these Chapter 11 Cases, the business or contractual arrangements between the Debtors and any of the Released Parties, the negotiation, formulation or preparation of the Plan, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission as an officer, manager, director, agent, representative, fiduciary, controlling person, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, provided, however, nothing in this section shall be construed to release or exculpate (a) any Released Party from Claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent that such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud or a criminal act, and (b) the obligations of the Buyers under the Asset Purchase and Sale Agreement (§ 1.7) and the Sale Order (§ 1.74).

### 11.7  Releases by Certain Holders of Claims.

**On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties (§ 1.70), for itself and its respective successors, assigns, transferees, current and former officers, directors, agents and employees, in each case in their capacity as such, shall be deemed to have released any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of a debtor or its estate, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise against each of the Released Parties (§ 1.69) and all of their respective officers, directors, employees, attorneys, advisors, professionals, agents, or other related persons, including any successor to the Debtors, the Liquidating Trustee, or any Estate representative, arising prior to the Effective Date; provided, however, nothing in this section shall be construed to release or exculpate any person or entity from (a) claims or liabilities arising out of or relating to any act or omission of a**

Released Party to the extent that such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, or a criminal act, or (b) any post-Effective Date obligations under the Plan, including under any of the Plan Transactions (§ 1.63).

Further, nothing in this Plan shall effect a release of any claim by the United States government or any of its agencies or any State or local authority arising under the environmental laws or any criminal laws of the United States or any State or local authority against the Released Parties and all of their respective officers, directors, employees, attorneys, advisors, professionals, agents, or other related persons, nor shall anything in the Plan enjoin the United States or any State or local authority from bringing any claim, suit, action or other proceeding against the parties referred to herein for any liability arising under the environmental laws or any criminal laws of the United States or any State or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States government or any of its agencies or any State or local authority for liabilities arising under the environmental laws or any criminal laws of the United States or any state or local authority against the parties referred to herein.

Notwithstanding the foregoing, to the extent a Releasing Party holds both a Claim that is Unimpaired, on the one hand, and a Claim or Interest that is Impaired and entitled to no distribution under this Plan, on the other hand, such Releasing Party shall not be deemed to grant a release of such Impaired Claim or Interest.

### 11.8  Exculpation.

Without limiting the generality of section 1125(e) of the Bankruptcy Code, upon and effective as of the Effective Date, the Debtors and their managers, officers, employees, authorized signatories who served at any time during these bankruptcy cases, and the Debtors' professionals retained in these cases, will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan or related documents, the Exculpated Parties shall neither have nor incur any liability to any Person for any prepetition or postpetition act taken or omitted to be taken in connection with the preparation for the filing of or the prosecution of the Chapter 11 Cases or the negotiation, documentation, and consummation of the Sale, and in all events, as to each exculpated person or entity, solely for their role, duty or responsibilities indirectly or directly on behalf of the Debtors in the preparation of and prosecution of the Chapter 11 Cases; provided that the foregoing "exculpation" shall have no effect on the liability of any Person that results from any such act or omission that is determined in a final order to have constituted willful misconduct, gross negligence, fraud or a criminal act; provided, further, that nothing herein shall prevent each of the Exculpated Parties from asserting as a defense that they have relied in good faith upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### 11.9  Release of Liens.

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens (§ 1.50), pledges, or other security interests against any property of the Estates shall be fully released.

### 11.10  Scope of Releases.

Each Person providing releases under the Plan, including the Debtors, the Estates and the Releasing Parties, shall be deemed to have granted the releases set forth in the Plan notwithstanding that such Person may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such Person expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

### 11.11  Retention of Causes of Action/Reservation of Rights.

#### 11.11.1        No Waiver of Claims

Except as otherwise expressly provided in the Plan (including in Sections 6.6 and 11.6 hereof), nothing contained in this Plan or in the Plan Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors may have or which the Debtors may choose to assert under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors or their officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates.

#### 11.11.2        Reservation of All Rights

Except as otherwise expressly provided in this Plan (including in Sections 6.6 and 11.6 hereof), nothing contained herein or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense.  No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action against them.

### 11.12  Cancellation of Agreement, Notes, and Interests.

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, stock, interests, instruments, certificates, and other documents evidencing the Claims against or Interests in any of the Debtors shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.  On

the Effective Date, except to the extent otherwise expressly provided herein, any indenture or other agreement relating to any of the foregoing shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.

## SECTION 12 RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Cases, to the maximum extent permitted by applicable law, including, without limitation, for the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Plan Confirmation Date;

(c)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     to enter, implement, or enforce such orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Plan Confirmation Order, or any other order of the Bankruptcy Court

(g)     to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Plan Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(i)     to hear and determine all requests for payment of Administrative Expense Claims;

(j)       to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing, including the Litigation Trust Agreement;

(k)       to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(l)       to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve, personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(m)       to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

(n)       to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)       to hear and determine any other matters related hereto as to which the Bankruptcy Court has jurisdiction;

(p)       to enter a final decree closing the Chapter 11 Cases;

(q)       to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(r)       to hear and determine any rights, claims, or Causes of Action (including but not limited to the Arizona Tax Refund Claim (§ 1.6)) held by or accruing to the Debtors pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

## SECTION 13 MISCELLANEOUS PROVISIONS

### 13.1  Payment of Statutory Fees.

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors and the Liquidating Trustee shall be jointly and severally liable to pay any and all such fees when due and payable.  The Debtors shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee.  Each and every one of the Debtors and the Liquidating Trustee shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

### 13.2  Substantial Consummation.

On the Effective Date and the commencement of distribution under this Plan, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

### 13.3  Operations Between the Confirmation Date and the Effective Date.

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### 13.4  Determination of Tax Liabilities.

The Debtors shall, pursuant to section 505(b) of the Bankruptcy Code, have the right to request an expedited determination of any unpaid liability of the Debtors' Estates for any tax incurred during the administration of the Chapter 11 Cases.

### 13.5  Amendments.

### 13.5.1  Modifications to Plan.

This Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (to the extent applicable), subject to the prior written consent of the Secured Lenders (which consent shall not be unreasonably withheld), without additional disclosure pursuant to section 1125 of the Bankruptcy Code; provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Plan.  In addition, after the Plan Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

### 13.5.2  Other Amendments.

The Debtors may make appropriate technical adjustments and modifications to this Plan prior to the Effective Date, subject to the prior written consent of the Secured Lenders (which consent shall not be unreasonably withheld), without further order or approval of the Bankruptcy Court.  All Plan amendments shall be promptly filed with the Bankruptcy Court.

### 13.6  Revocation or Withdrawal of the Plan.

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date. Any such action may only be taken if it is in the exercise of the Debtors' fiduciary duty to their creditors.  If the Debtors take such action, this Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any

claims by or against, or equity interests in, the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

### 13.7 Continuing Exclusivity of Debtors' Right to File and to Solicit Acceptances of a Chapter 11 Plan.

The Debtors are currently operating within the plan filing and plan solicitation exclusivity periods under Bankruptcy Code section 1121, as extended by prior order of the Bankruptcy Court [Docket No. 352] to December 6, 2016, and February 14, 2017, respectively. Accordingly, the Debtors retain, and the Debtors have, the exclusive right to amend or modify this Plan, subject to the prior written consent of the Secured Lenders (which consent shall not be unreasonably withheld), and to solicit acceptances of such amended or modified Plan.

### 13.8 Records Retention and Destruction Procedures.

Any notice of the occurrence of the Effective Date of the Plan filed by the Debtors shall make reference to the records retention procedures set forth in this Section 13.8 and shall set a deadline 60 days from the Notice of Effective Date for any party or governmental unit to file a notice and request for records preservation. Any such records preservation notice shall include an undertaking that the requesting party will make reasonable cost-sharing provisions for staffing necessary to respond to any records inspection request, or the cost to preserve any requested records. The Liquidating Trust shall have no obligation to make expenditures or incur liability to preserve records. In no event shall Sundevil or the Liquidating Trustee have any obligation to preserve copies of any documents or electronically-stored information (ESI) that were transferred to the Buyers. Notwithstanding the extinguishment of the membership interests in Holdco, following the Effective Date, on reasonable written notice to the Liquidating Trustee, authorized representatives of the former members of Holdco shall be entitled to inspect and to receive any documents or ESI in the possession, custody, or control of the Liquidating Trustee, subject to funding by such parties of any reasonable expenses and fees the Liquidating Trustee incurs in responding to requests of, and providing access to such documents and ESI to, such members. The Liquidating Trustee shall be entitled to cause the destruction of any and all records (including ESI) 15 days after entry of an order granting a final decree and closing the Sundevil Chapter 11 Case.

### 13.9 Severability.

If, prior to the entry of the Plan Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.10   Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 13.11   Time.

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.12   Binding Effect on Debtors, Holders and Successors and Assigns.

Upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, and any and all holders of Claims and Interests (irrespective of whether any such holders of Claims and Interests failed to vote to accept or reject this Plan, voted to accept or reject this Plan, or were deemed to accept or reject this Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, and injunctions described in this Plan, each Person or Entity acquiring or retaining property under this Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

### 13.13   Entire Agreement.

On the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**13.14   Effective Notice.**

All notices, requests, and demands to or upon the Debtors in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Attn:  Steven K. Kortanek, Esq.
Tel: (302) 467-4200
Fax: (302) 467-4201

-and-

Vinson & Elkins LLP
2001 Ross Ave., Ste. 3700
Dallas TX 75201-2975
Attn:  Paul Heath, Esq.
Tel: (214) 220-7700
Fax: (214) 220-7716

Dated:  December 21, 2016            */s/ Raphael T. Wallander*
                                     Name:  Raphael T. Wallander
                                     Title:  Principal at Wayzata Investment
                                     Partners LLC, manager of the Debtors

**EXHIBIT A**

**Wind-Down Budget**

# In re Sundevil Power Holdings, LLC, et al.

*Wind Down Budget (page 1 of 2)*

| | February - April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|
| **DBR** | $200,000 | $100,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 |
| **V&E** | $245,000 | $250,000 | $124,000 | $200,000 | $175,000 | $150,000 | $100,000 | $100,000 | $75,000 |
| **GCG** | $137,000 | $18,000 | $13,000 | $15,000 | $15,000 | $15,000 | $20,000 | $20,000 | $15,000 |
| **KPMG** | $159,000 | $56,000 | $16,000 | $22,000 | $0 | $10,500 | $12,000 | $32,500 | $34,000 |
| **JEFFERIES** | $180,000 | $60,000 | $60,000 | $60,000 | $60,000 | $60,000 | $60,000 | $60,000 | $510,000 |
| **SQUIRE** | $0 | $0 | $50,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 | $15,000 |
| **WAYZATA** | $30,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 | $10,000 |
| **KELSON** | $105,000 | $35,000 | $35,000 | $35,000 | $82,500 | $82,500 | $82,500 | $82,500 | $82,500 |
| **MILLER ADVERTISING** | $33,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **U.S. TRUSTEE** | $20,000 | $0 | $0 | $20,000 | $0 | $0 | $20,000 | $0 | $0 |
| **MISC. ADMIN. CLAIMS** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $750,000 |
| **FEE EXAMINER** | $0 | $0 | $20,000 | $15,000 | $15,000 | $20,000 | $15,000 | $15,000 | $20,000 |
| **L.T. & COUNSEL** | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $350,000 |
| | $1,109,000 | $529,000 | $378,000 | $442,000 | $422,500 | $413,000 | $384,500 | $385,000 | $1,911,500 |

## Notes

1. This budget assumes the transaction closes on or before December 31, 2016 (delay in closing will require amendment to the budget).

2. Amounts in this budget are rounded to the nearest $1,000 (except for Kelson).

3. Monthly estimates for Jefferies include a $10,000 expense estimate.

6. The December payment to Jefferies represents the $1,000,000 "Transaction Fee" with prior monthly fees credited against such Transaction Fee per the terms of the engagement letter.

7. Amounts in the Wayzata row represent expense estimates only.

8. Miscellaneous administrative claims represent a good faith/precautionary reserve for any amounts not assumed by the purchaser under the APA.

*Wind Down Budget (page 2 of 2)*

|  | Total Estimated | Paid to Date | Unpaid | Retainer Balance |
|---|---|---|---|---|
| **DBR** | $650,000 | $0 | $650,000 | $10,000 |
| **V&E** | $1,419,000 | ($388,000) | $1,031,000 | $230,000 |
| **GCG** | $268,000 | ($26,000) | $242,000 | $0 |
| **KPMG** | $342,000 | ($174,000) | $168,000 | $0 |
| **JEFFERIES** | $1,110,000 | ($163,000) | $947,000 | $0 |
| **SQUIRE** | $140,000 | $0 | $140,000 | $0 |
| **WAYZATA** | $110,000 | ($11,000) | $99,000 | $0 |
| **KELSON** | $622,500 | ($245,000) | $377,500 | $0 |
| **MILLER ADVERTISING** | $33,000 | ($33,000) | $0 | $0 |
| **U.S. TRUSTEE** | $60,000 | ($40,000) | $20,000 | $0 |
| **MISC. ADMIN. CLAIMS** | $750,000 | $0 | $750,000 | $0 |
| **FEE EXAMINER** | $120,000 | $0 | $120,000 | $0 |
| **L.T. & COUNSEL** | $350,000 | $0 | $350,000 | $0 |
| | **$5,974,500** | **($1,080,000)** | **$4,894,500** | **$240,000** |